No. 89-160
89-385

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

_____

JOHN M. McCRACKEN and JAMES WAGGONER,

       Plaintiffs, Appellants and
       Cross-Appellants,

  -vs-

CITY OF CHINOOK, MONTANA,

       Defendant, Respondent and Appellant.

_____

APPEAL FROM:  District Court of the Seventeenth Judicial District,
              In and for the County of Blaine,
              The Honorable Leonard Langen, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Patrick F. Flaherty; Flaherty & Winner, Great Falls,
        Montana
        Robert Emmons, Great Falls, Montana

    For Respondent:

        Darcy Crum; James Gray & McCafferty, Great Falls,
        Montana

Submitted on Briefs:  Dec. 21, 1989

Decided:    March 8, 1990

/Clerk

Justice R.C. McDonough delivered the Opinion of the Court.

John McCracken and James Waggoner appeal from an order of the Seventeenth Judicial District, Blaine County, granting summary judgment to respondent, the City of Chinook, and assessing sanctions against the appellants. The lower court found that the appellants voluntarily terminated their employment, and therefore dismissed their cause of action alleging wrongful discharge. We affirm.

The issues in this case are:

1. Whether the District Court erred in concluding that no genuine issue of material fact existed that appellants were not terminated by the City but instead quit.

2. Whether the District Court erred by assessing Rule 11 sanctions against the appellants.

Because this is an appeal from an order granting summary judgment, we review the facts in a light most favorable to the appellants.

John McCracken and James Waggoner were both police officers in Chinook, Montana. McCracken was hired on October 14, 1983 and Waggoner was hired on January 1, 1982. Both left the police department shortly past midnight on July 31, 1984.

During their careers, McCracken and Waggoner were the subject of much controversy concerning their performance while on duty. McCracken, for his part, was involved in an arrest of Pete Doney on December 5, 1983. Following this arrest, Doney alleged that he had been assaulted by McCracken and another police officer, Jerry

Liese. An investigation of the incident ensued and charges were brought against McCracken before the Police Commission. Felony charges were also filed in state district court relative to this incident. The judge found probable cause to exist and allowed an information to be filed. As a result of these charges, McCracken was suspended by the Mayor of Chinook pending a full investigation by the Police Commission.

The Police Commission hearing was held on March 7, 1984. This hearing resulted in all charges against McCracken being dismissed. Eventually, the felony charges pending in district court were also dismissed. McCracken was reinstated as a police officer and awarded back pay.

Waggoner was also subject to allegations of misconduct. In May of 1984, he was a participant in a fight with Ray Nez Perce at the Elk's Bar in Chinook. As a result of this incident, he was charged and eventually convicted of disorderly conduct.

McCracken and Waggoner were also accused of an incident involving joint misconduct. There are completely different accounts of this event, however both admit that the incident was part of the reason they are no longer members of the police force.

According to the appellants' brief, McCracken and Waggoner were caught swimming in an irrigation ditch with a young woman. Their story is unclear, however it appears as though the participants were in various stages of undress while they were swimming. It is conceded that this incident was a result of poor judgment by the police officers.

The City presents a totally different version of the event. According to their brief, McCracken and Waggoner went to a house occupied by Pete Doney, Ray and Frank Nez Perce and the woman. When they arrived at the house, McCracken pushed open the door, and entered and invited the woman to go skinny dipping. The woman refused this request and the following day charges were filed against McCracken for trespass. Eventually these charges were dropped.

As a result of these events, the police officers' relationship with their employer, the City of Chinook, became very strained. According to McCracken and Waggoner, the Mayor began earnestly seeking their resignation. He also threatened to fire them on occasion. Finally, at midnight on July 31, 1984, at 12:43 a.m., the police officers called into the dispatcher and checked out "permanently 10-10, 10-42." In police terminology, 10-10 is the code for off-shift and 10-42 is the code for notifying the dispatcher that the officer is now home. According to the dispatcher's testimony, Waggoner's statement meant to her, that he was quitting. The appellants never returned to work.

According to the City, the police officers' actions were a voluntary termination of employment. Waggoner's and McCracken's resignations took them by complete surprise and as a result, the City was left without police protection during the early morning hours of July 31.

The police officers, however, steadfastly maintain that they were either forced to resign or were fired and that the City knew

4

they would be permanently off shift as of 12:00 a.m. According to McCracken's summary of the events, he and Waggoner were summoned to the Mayor's office in the afternoon of July 30. The Mayor then informed McCracken that due to a reorganization of the police force, he would be laid off. Apparently the police chief was stepping down to patrolman and a new chief was going to be hired. Since McCracken had the least amount of seniority, he would be the one to be discharged.

Waggoner on the other hand maintains that he had been subject to repeated demands to resign. Finally the Mayor told him that if he did not quit he would be fired. However, if he quietly resigned the City would give him a good recommendation which could be used to get a job elsewhere. According to Waggoner he complied with the Mayor's request and tendered a "forced" resignation. He maintains that the Mayor accepted the resignation and that he was under the impression that he too, would be relieved of all duties as of 12:00 a.m., July 31.

Apparently Waggoner's written resignation was never accepted by the City. He states that the Mayor told him he would sign the acceptance of the resignation the following day. The resignation was never signed by the Mayor, however, and the City maintains it was never accepted due to conditions contained therein.

On February 19, 1986, Waggoner and McCracken filed a complaint alleging wrongful discharge, constructive discharge, breach of contract and breach of the covenant of good faith and fair dealing. Following four amended complaints, the District Court granted

5

summary judgment in favor of the defendants. The court also assessed Rule 11 sanctions in the amount of $1200.00 against the plaintiffs for what was termed "lousy pleading." This appeal followed.

I

The standard that an appellate court applies in reviewing a grant of summary judgment is the same as that initially utilized by the trial court under Rule 56, M.R.Civ.P. Summary judgment is proper when it appears "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Kelly v. Widner (1989), 46 St.Rep. 591, 771 P.2d 142. We must review the evidence submitted by the appellants, in this light, in order to determine whether the lower court properly granted summary judgment.

The trial court ruled that in order to have a cause of action for wrongful discharge, a plaintiff must first establish that he was legally discharged. In order for a police officer to be legally discharged, he must first be given a hearing before the police commission. Section 7-32-4162, MCA. Neither McCracken nor Waggoner were taken before the police commission. Therefore, they were not legally discharged and accordingly they cannot now bring a cause of action alleging wrongful discharge.

The trial court also found that both officers were concerned over the probable filing of charges against them. It was this concern which led Waggoner to call in and tell the dispatcher that he was permanently 10-10, 10-42, which in police terminology means

6

he is quitting. Montana has not yet recognized that an action for wrongful discharge can be successfully asserted when an employee voluntarily terminates the employment relationship. Gates v. Life of Montana Insurance Co. (1982), 196 Mont. 178, 638 P.2d 1063; Gates v. Life of Montana Insurance Co. (1983), 205 Mont. 305, 668 P.2d 213; Dare v. Montana Petroleum Marketing Co. (1984), 212 Mont. 274, 687 P.2d 1015; Crenshaw v. Bozeman Deaconess Hospital (1984), 213 Mont. 488, 693 P.2d 487. Under this set of facts, we decline to expand the cause of action to include such circumstances. Therefore, because the record indicates the appellants voluntarily quit the police force, their cause of action is barred.

McCracken and Waggoner submitted several affidavits and articles from the local newspaper which tend to support their contentions that they were forced to resign. However, even assuming that this evidence is admissible it does not overcome the facts that these police officers were never lawfully or unlawfully discharged and that they themselves called into the dispatcher and told her that they were permanently off duty. Regardless of any actions taken by the Mayor prior to this act, it is clear that as a matter of law they were not discharged and that they voluntarily terminated their employment. We agree with the District Court that under the facts here, neither McCracken nor Waggoner were wrongfully discharged, nor did the City commit breach of contract or breach of the covenant of good faith and fair dealing. The judgment of the District Court granting summary judgment to the defendants is affirmed.

7

## II

The District Court imposed a $1200.00 sanction upon the appellants and their attorney as a punishment for their incomprehensible pleadings. Apparently the original complaint was in such a state of disarray that the plaintiffs were forced to file four amended complaints and a More Definite Statement before the allegations became comprehensible. As a result of the confused nature of these pleadings, the City was forced to file at least three separate Motions to Dismiss and a Motion for Summary Judgment. The District Court found that this inept legal work cost the City of Chinook thousands of dollars in unnecessary legal costs. It decided, however, to make only a small assessment in order to impress upon the appellants their duty to present professional work to the courts.

The amount of a sanctions award is discretionary with the district court. Such a ruling will not be disturbed unless the court acted arbitrarily or committed a clear abuse of discretion. Smith v. Colonial Terrace Associates (1986), 223 Mont. 8, 723 P.2d 954. The lower court's determination in this matter was not an abuse of discretion and accordingly we uphold the $1200.00 sanction award. Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

8

_Diane G. Barr_

_William E. Hunter_

_John C. Sheehy_
Justices

9