No. 91-150

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

GARY W. MANNIX,

      Plaintiff and Appellant,

-vs-

THE BUTTE WATER COMPANY, a New Jersey Corp., and DENNIS WASHINGTON,

      Defendants and Respondents.

APPEAL FROM:   District Court of the Second Judicial District,
               In and for the County of Silver Bow,
               The Honorable James E. Purcell, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Frank B. Morrison: John M. Morrison argued: Morrison
          Law Offices, Helena, Montana.

      For Respondent:

          Ronald B. MacDonald argued: Datsopoulos, MacDonald
          & Lind, Missoula, Montana.

**FILED**

AUG 20 1991

Filed: *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted: May 8, 1991

Decided: August 20, 1991

_____
Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an action for wrongful discharge. Plaintiff Gary W. Mannix appeals an order of the Second Judicial District, Silver Bow County, granting summary judgment for defendant Dennis Washington on all claims except a "corporate veil" claim. We affirm.

The issue is whether a genuine issue of material fact has been demonstrated as to whether Washington acted in retaliation in removing Mannix from office, so that Washington can be held personally liable for Mannix's discharge as president of the Butte Water Company.

Plaintiff Gary W. Mannix (Mannix) was an employee of the Butte Water Company (Water Company) from **1973** until December **1985.** From **1983** until the end of his tenure, he was president of the Water Company.

From the **1960's** until December **1985,** the Water Company was owned by the Atlantic Richfield Company (ARCO), and its various predecessors in title. In September of **1985,** defendant Dennis Washington (Washington) and ARCO entered a letter agreement that Washington would purchase from ARCO a Butte mine, some 35,000 acres of property around Georgetown Lake, and the Water Company.

At the time of the September **1985** negotiations between ARCO and Washington, the Water Company carried, and had carried for some years, a note payable to ARCO for approximately **$4.5** million. Part of the initial agreement between Washington and ARCO was that the **$4.5** million debt would be erased and that Washington would receive the Water Company free and clear.

Dorn Parkinson was the president of Washington Corporations and also, an employee of Washington. On behalf of Washington, Parkinson met with Mannix several times in the fall of **1985** prior to the closing of the sale. Due at least in part to what he learned at those meetings, Parkinson determined that it would not be beneficial for the Water Company to be debt free. Washington arranged to use a personal line of credit at a Minnesota bank to get a $2 million loan for the Water Company and to personally guarantee the loan. ARCO and Washington agreed to modify the sale agreement to reflect a debt of $2 million on the Water Company. Washington and *ARCO* agreed that the $2 million obtained from the Minnesota bank would be paid to *ARCO*, and Washington's purchase price for the package would be reduced by $2 million. The **$4.5** million debt of the Water Company would be released as originally agreed, and Washington would own 100% of the stock in the Water Company.

On December **13, 1985,** the ARCO legal division asked Mannix, as the president of the Water Company, to call a meeting of the Board of Directors to authorize the execution of a *$2 million six* month promissory note. Mannix consulted several board members and a rate analyst at the Public Service Commission, but he did not call a board meeting. He refused to execute the note on grounds that to do so was not in the interest of the Water Company. In his view, the note represented an increased debt for the Water Company, with no concomitant benefit, compared to the debt-free status the company would have enjoyed under the terms of the deal tentatively

3

negotiated in September.

After Mannix refused to sign the promissory note, ARCO officials ordered him to do so or face personal liability if the deal fell through. Washington testified that, between December 13 and **18, 1985,** while he was in the offices of Gene Tidball, ARCO's corporate legal counsel, he overheard a phone conversation between Tidball and Mannix from which he gathered that "[t]hey were having some problems with him . . . he didn't want to sign **something."**

Mannix and another boardmember eventually signed a resolution authorizing Frank Gardner, another board member, to execute the note on behalf of the Water Company. Gardner executed the note and the closing of the deal between ARCO and Washington was held on December **18, 1985.**

On December **18, 1985,** after the closing, Washington, through his corporate counsel John Thiebes, asked for the resignation of all members of the Board of Directors of the Water Company, effective immediately. The next day, Washington, as the sole shareholder in the Water Company, elected a new board of directors, consisting of himself, Parkinson, and Thiebes. At a directors' meeting immediately thereafter, Parkinson was instructed to meet with Mannix to determine whether he should be retained as president of the Water Company.

Parkinson met with Mannix on December 20, **1985,** in Butte, Montana. According to Parkinson's deposition, he had been authorized by the new board of directors "to take whatever action I felt was necessary, including a termination." Parkinson stated

4

that, by the end of their conversation, Mannix agreed that he could no longer work for the company. In his deposition, Mannix stated that Parkinson told him that the new board of directors did not feel that they could work with him and that, therefore, he was terminated.

Mannix's complaint for wrongful discharge and a violation of an implied covenant of good faith and fair dealing was originally filed against ARCO, Anaconda Minerals Company, the Water Company, Washington Corporations, and Washington. All claims have been dismissed against ARCO, Anaconda Minerals Company, and Washington Corporations. In the order from which appeal is taken, all claims against Washington were dismissed except a claim based on a "piercing the corporate veil" theory.

Following the order granting summary judgment, a motion for substitution of judge was filed and the Honorable James E. Purcell assumed jurisdiction over the case. Two days later, the Honorable Leonard Langen, who had granted the summary judgment, filed a memorandum opinion in support of his ruling. Because Judge Purcell had already assumed jurisdiction when it was filed, we have not considered the memorandum opinion in reaching our decision.

Is there a genuine issue of material fact as to whether Washington acted in retaliation in removing Mannix from office?

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there are no genuine issues of

material fact and that the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. This Court's standard of review is the same as that employed by the district court. McCracken v. City of Chinook (1990), 242 Mont. 21, 24, 788 P.2d **892**, 894.

Mannix argues that Washington can be held personally liable, as a member of the board of directors of the Water Company, in connection with Mannix's discharge as president of the Water Company if Washington's actions were against the best interests of the corporation, were for his own pecuniary benefit, or were undertaken with the intent to harm Mannix. Phillips v. Montana Ed. Ass'n. (1980), 187 Mont. 419, 425, 610 P.2d 154, 158.

Mannix argues that it was against the best interests of the Water Company to discharge him because of his good work record with the company. He asserts that he was following his own corporate bylaws and honoring the wishes of his board of directors in refusing to sign the $2 million note.

It is clear that the disagreement about whether it was in the Water Company's best interests to sign the $2 million note was actually between Mannix and ARCO, because the Water Company was controlled by *ARCO* at that time. Moreover, Mannix has failed to present any facts supporting the argument that signing the note was against the best interests of the Water Company. The record on summary judgment demonstrates that as a result of the purchase by Washington, the Water Company debt was reduced from approximately $4.5 million to $2 million. In addition, five months

*6*

after the purchase, Washington personally paid off the note, leaving the Water Company free of debt.

Mannix stated in his deposition that he did not know what he would do if faced with another situation in which he did not agree with the board of directors as to whether a particular action would be in the best interests of the Water Company. In contrast, Parkinson's deposition established that the corporation needed "team players."

We conclude that Mannix has failed to present facts which support the argument that his employment termination was against the best interests of the Water Company. Further, nothing in the summary judgment record supports an argument that Washington terminated the employment of Mannix for his own pecuniary benefit. The remaining question is whether Washington is personally liable for Mannix's termination because it was his personal act of retaliation for Mannix's refusal to sign the $2 million note on behalf of the Water Company.

In support of the argument that Washington is personally liable on these grounds, Mannix cites Washington's apparent absolute control of the new board of directors. However, in the absence of a factual demonstration of retaliation, Mannix fails to demonstrate how that control is relevant.

According to the depositions, Washington and Mannix had met only once before Mannix was terminated. In his deposition, Washington stated that, when he overheard the argument between Tidball and Mannix, his reaction was "I thought he had a lot of

balls." Both Washington and Parkinson testified by deposition that the decision of whether Mannix should remain as president of the Water Company was left to Parkinson. Mannix points to a statement by Parkinson, in a deposition taken for another case but included in this record, that the Directors of the Water Company made the decision to terminate Mannix's employ. However, that statement was explained in Parkinson's deposition for this case, in which he stated that the termination of Mannix's employ was empowered by and subsequently approved by the board of directors, but that the decision of whether to terminate Mannix was left to him. These facts do not demonstrate a retaliatory discharge on the part of Washington.

Mannix argues that the new board of directors was unlawful because it only had three members and because the secretary of the Water Company was not present at the board meeting. He relies upon Article VII, Section 2 of the By-Laws of the Water Company:

> In case of a vacancy in the Board the remaining Directors shall continue to act: but if at any time their number be reduced to less than four, it shall be the duty of the remaining Directors to forthwith fill the vacancies.

However, Article V, Section 4 of the same By-Laws provided that

> [t]hree Directors assembled together at any meeting shall constitute a quorum competent to transact business. . .

We conclude that a quorum of three directors was authorized to take action, under the By-Laws. As to the presence of the secretary of the Water Company, John Thiebes took notes as "acting secretary." We conclude that was sufficient in a corporation newly acquired by one shareholder.

8

As the First Circuit Court of Appeals has noted

> State of mind is difficult to prove and great circumspection is required where summary judgment is sought on an issue involving state of mind. . . . But that does not mean that a party against whom summary judgment is sought is entitled to a trial simply because he has asserted a cause of action to which state of mind is a material element. There must be some indication that he can produce the requisite quantum of evidence to enable him to reach the jury with his claim.

Hahn v. Sargent (1st Cir. 1975), 523 F.2d 461, 468, cert. denied, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754. Although he has made an extensive argument, Mannix simply has not brought out any facts to support his position that Washington personally terminated Mannix's employment with the Water Company in retaliation for his refusal to sign the $2 million note. We hold that the District Court did not err in granting summary judgment for Washington on all claims but the "corporate veil" claim.

Affirmed.

_____ Justice

_____
Chief Justice

Chief Justice

_____

_____

_____

_____
Justices

Justice R. C. McDonough respectfully dissents.

In order for summary judgment to issue, the party moving for summary judgment has the burden of showing a complete absence of genuine issues as to all facts deemed material. All reasonable inferences that may be drawn from the offered proof are to be drawn in favor of the party opposing summary judgment. Cereck v. Albertson's Inc. **(1981), 195** Mont. **409, 411,** 637 P.2d **509,** 511.

The above last sentence is especially appropriate in this case. The question here involves more than whether there is a genuine issue of objective material facts. It involves the ultimate fact of intent and motive of Mr. Washington. When different ultimate inferences or determinations can be drawn from an admitted set of facts (as here), such determination is a question of fact for the jury.

Mr. Washington had proposed that the sale of the Butte Water Company be accomplished not by his putting up all of the $4 million to buy the stock, but by his putting up $2 million and the Butte Water Company borrowing $2 million. The ostensible purpose of the creation of the debt was that a utility could obtain more favorable rates from the Public Service Commission if the utility had a significant debt.

It can also be deduced that Mr. Washington, even though he personally guaranteed the loan, had to come up with less money to buy the Company at the time of closing.

Either on the day of closing or the day before, Mr. Washington overheard the heated telephone conversation between Mr. Tidball,

10

an attorney for *ARCO,* and Mr. Mannix.  Mr. Tidball was angry and called the plaintiff insubordinate.  The plaintiff's action in refusing to sign the note was an obstacle to the closing of the transaction.  Mr. Washington wished to complete the sale.

The attitude of the plaintiff and ARCO's problem with Mannix, was discussed by Mr. Washington and Mr. Parkinson while flying back to Montana.  Shortly after returning to Montana, Mr. Parkinson had a meeting with Mr. Mannix and Mannix was discharged.

As stated in Phillips v. Montana Education Assoc. **(1980),** 187 Mont. **419, 425,** 610 P.2d **154, 158,** one reason a director of a corporation can be held personally liable for his alleged tortious acts is if such acts are done with the intent to harm the plaintiff.

The plaintiff asserts his termination was wrongful and Washington got rid of him in retaliation for his actions with *ARCO* in refusing to sign the note.  Mr. Washington asserts there was no intent to harm the plaintiff and the plaintiff's own statements led to his discharge.

For purposes of summary judgment, the issue for consideration is:  whether on these facts, a reasonable inference can be made that Mr. Washington retaliated and intended to punish or harm the plaintiff for his actions in placing an obstacle in the path of the closing of the sale.

This essentially requires a determination of Mr. Washington's state of mind.  When motivation is involved and credibility becomes of critical importance, or when essential facts are solely within

the control of the moving party, summary judgment generally is inappropriate. *Mazaleski v. Treusdell* (D.C.Cir. 1977), 562 F.2d 701, 717; *Poller v. Columbia Broadcasting System, Inc.* (1962), 368 U.S. 464, 473, *82* S.Ct. 486, 491, 7 **L.Ed.2d** 458, 464; see also *Egger v. Phillips* (7th Cir. 1982), 669 F.2d 497. Here motivation is involved. Evidence from pertinent witnesses is oral and credibility is of critical importance. The essential facts are solely within the control of the defendant. All three of the criteria fit. A determination involving a party's state of mind is seldom susceptible to direct proof, but must be inferred from circumstantial evidence. If improper motive can reasonably be inferred from the evidence, sworn denial does not entitle a defendant to summary judgment. *Conrad v. Delta Airlines* (7th Cir. 1974), 494 F.2d 914, 918. <u>Egaer v. Phillips</u>, <u>supra</u>.

After drawing all reasonable inferences in favor of the plaintiff from the above admitted facts, a jury can reasonably infer that Mr. Washington's motive was improper and he intended to harm the plaintiff. The motion for summary judgment should have been denied and the intent and motive of Mr. Washington should be an ultimate fact to be resolved by a jury.

I would reverse on this issue and direct the District Court to vacate its order of summary judgment.

_____
Justice

12

We concur in the foregoing dissent of Justice McDonough.

_William E. Hunt Sr._

_Tom Tuewich_
    J stices

August 20, 1991

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


Frank B. Morrison, Jr. and John M. Morrison
Morrison Law Offices
80 So. Warren
Helena, MT   59601

Ronald B. MacDonald
Datsopoulos, MacDonald & Lind
201 W. Main, Central Square Bldg.
Missoula, MT   59802


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY _____
   Deputy