No.   94-370

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

MARIA CONTRERAZ, LISA SCOTT,
CARMEL ROMERO, ISABEL GAYLOR,
JOHN CUELLAR, JOE CUELLAR,
JESSE CUELLAR, MARIAN ESTRADA,
and JOSEY GUTIERREZ,

      Plaintiffs and Appellants,

  v.

MICHELOTTI-SAWYERS   and
NORDQUIST MORTUARY, INC.,
and DAHL FUNERAL CHAPELS,

      Defendants and Respondents.

**FILED**

JUN 01 1995

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Thirteenth Judicial District,
               In and for the County of Yellowstone,
               The Honorable William J. Speare, Judge presiding.

COUNSEL OF RECORD:

      For Appellants:

          W. Scott Green; West Patten Bekkedahl & Green
          Billings, Montana (argued)

      For Respondents:,

          Guy W. Rogers; Brown, Gerbase, Cebull, Fulton,
          Harman & Ross, Billings, Montana (argued for
          Michelotti-Sawyers)

          Rodney T. Hartman; Herndon, Hartman, Sweeney &
          Halverson, Billings, Montana (argued for Dahl
          Funeral Chapels)

      For Amicus Curiae:

          Joe Seifert; Keller, Reynolds, Drake, Johnson
          & Gillespie, Helena, Montana (argued for Montana
          Funeral Directors Association)

Submitted:   March 9, 1995

Decided:   June 1, 1995

Filed:

                              Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Maria Contreraz (Maria) and eight family members (Appellants) appeal from an order of the Thirteenth Judicial District, Yellowstone county, granting Respondents' motion for summary judgment. The District Court concluded (1) that Appellants are not entitled to emotional distress damages resulting from Respondents' improper embalming of Appellants' mother's body; (2) that Appellants are not entitled to emotional distress damages for breach of contract; and (3) that Appellants are not entitled to recover damages for breach of contract. We reverse in part and affirm in part.

FACTS

The Parties

Basilia Cuellar (Cuellar) died on March 10, 1993. The Appellants are Cuellar's children, Maria Contreraz, Lisa Scott, Carmel Romero, Isabel Gaylor, John Cuellar, Joe Cuellar, and Jesse Cuellar, and grandchildren Marian Estrada and Josey Gutierrez. Appellants had pooled money for three years to pay for Cuellar's funeral expenses. Maria acted as spokesperson for Appellants, and on March 10, 1993, Maria contacted Michelotti-Sawyers and Nordquist Mortuary, Inc. (Michelotti-Sawyers). Michelotti-Sawyers picked up and embalmed Cuellar's body. Maria alleges a Michelotti-Sawyers employee offended her. On March 11, 1993, Maria called Michelotti-Sawyers and allegedly was treated rudely by another employee while discussing funeral arrangements. On March 15, 1993, Michelotti-

2

Sawyers sent Maria a letter apologizing for any perceived rudeness. Michelotti-Sawyers denies it treated Maria with disrespect.

Approximately thirty minutes after Maria's conversation with Michelotti-Sawyers, Maria contacted Dahl Funeral Chapels (Dahl) to have it pick up Cuellar's body. No contract was signed between Maria and Michelotti-Sawyers. Maria was the only Appellant to sign a contract with Dahl for Cuellar's funeral.

Michelotti-Sawyers was aware that many of Cuellar's children would contribute to Cuellar's funeral expenses. Dahl employee John Dahl was also aware that Maria signed the contract with Dahl on behalf of other family members.

On March 11, 1993, during a family visitation with Cuellar's body, Carmel, John, and Joe observed that clothes on the right side of the body had a red/rust stain, approximately 2-4 inches wide by 18 inches long. Family members alerted Dahl's evening attendant who contacted Dahl's mortician. The mortician arrived within approximately two minutes and informed family members that he would remedy the problem when family members left. Family members remained with the open casket for approximately two hours. The stain came from a surgical incision which was leaking embalming fluid. Although the incision was covered by a four-inch square bandage, it had gone unnoticed by both Michelotti-Sawyers and Dahl. Dahl employees repaired the leak site, placed clean clothes on the body, and cleaned the coffin.

The remainder of the funeral arrangements proceeded as planned and Appellants were satisfied with the funeral. The family,

through Maria, paid Dahl's bill in full, including the costs Michelotti-Sawyers charged for embalming. During a telephone conversation between Michelotti-Sawyers employee Mike Nordquist and and John Dahl, Nordquist conveyed that Michelotti-Sawyers would not charge for the embalming, and Dahl refunded to Maria the amount paid for embalming.

Appellants filed suit against Michelotti-Sawyers and Dahl alleging negligent preparation of Cuellar's body, emotional distress damages, and breach of contract. Appellants filed a motion for partial summary judgment and Respondents filed a motion for summary judgment. Appellants, Michelotti-Sawyers, and Dahl submitted briefs and a hearing was conducted. In an order dated June 7, 1994, the District Court denied Appellants' motion and granted Respondents' motion. This appeal followed.

ISSUES

1. May damages for emotional distress be recovered for negligent conduct?

2. May emotional distress damages be recovered in a breach of contract action?

3. May Appellants recover contract damages?

STANDARD OF REVIEW

When reviewing an order granting summary judgment, this Court applies the same standard of review as that utilized by the trial court. McCracken v. City of Chinook (1990), 242 Mont. 21, 24, 788 P.2d 892, 894. Summary judgment is properly granted when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *McCracken, 788* P.2d at

894.

I

May damages for emotional distress be recovered for negligent conduct?

Negligent Conduct Causing Emotional Distress

The District Court applied what it concluded to be the majority view, that to recover damages for emotional distress, funeral home conduct in handling a dead body must be willful, wanton, or malicious. The District Court noted that it is undisputed that the funeral homes did not act with malicious or wanton conduct. Michelotti-Sawyers argues that in order to recover for negligent infliction of emotional distress, the distress must be accompanied by physical injury. We disagree.

We recently recognized the independent tort of negligent infliction of emotional distress in Sacco v. High Country Independent Press, Inc. (Mont. 1995), (94-304, decided May 19, 1995). In *Sacco*, we held that "[a] cause of action for negligent infliction of emotional distress will arise under circumstances where serious or severe emotional distress to the plaintiff was the reasonably foreseeable consequence of the defendant's negligent act or omission." Sacco, Slip Op. at 30. In **Sacco** we adopted the definition of severe or serious emotional distress from the Restatement (Second) of Torts, § 46, comment j at 77-78. **Sacco,** Slip Op. at 32-33. That opinion further detailed the Montana case history regarding our establishment of the tort of negligent infliction of emotional distress.

The question then becomes how to apply the rule established in

*Sacco* **to claims** based on negligent handling of dead bodies. Other jurisdictions have considered this issue. In Washington, the Supreme Court rejected the physical injury requirement for mental distress injuries, in favor of measuring a defendant's liability by:

> strictures imposed by negligence theory, i.e., foreseeable risk, threatened danger, and unreasonable conduct measured in light of the danger. [Citation omitted.] Mental suffering, to be compensable, however, must at least be manifested by objective symptoms. [Citation omitted.]

Corrigal v. Ball & Dodd Funeral Home, Inc. (Wash. 1978), 577 P.2d 580, 582. Michigan has recognized a particular interest in "knowing that the deceased has been given a comfortable and dignified resting place." Vogelaar v. United States (E.D. Mich. 1987), 665 F.Supp. 1295, 1306. We reject the conclusion adopted in **some** jurisdictions that misconduct by a funeral home warrants carving an exception to the "zone of danger" requirement (recovery for emotional distress resulting from viewing the serious injury or death of an immediate family member if the claimant was within the zone of danger). Kimelman v. City of Colorado Springs (Colo. App. 1988), 775 P.2d 51, 52.

In Versland v. Caron Transport (1983), 206 Mont. 313, 671 P.2d 583, we recognized the right to collect damages for negligent infliction of emotional distress when a plaintiff suffered direct emotional distress from witnessing the death or serious injury of a spouse even though not within the zone of danger. **Similarly, in** this case we recognize the right to damages for negligent infliction of emotional distress resulting from the mishandling of

6

**a corpse.** Our holding here does not create a new cause of action. Rather, we are applying our decision in *Sacco* to include negligent infliction of emotional distress in situations where the emotional distress resulted from negligent treatment of a dead body.

Negligent infliction of emotional distress **claims** focus on impacts to the living which result from mistreatment of the decedent's body. First, where the body is harmed and the decedent's survivors are aware, they may be impacted (emotional or physical impact) by the indignity and/or mistreatment. See, e.g., State v. Powell (Fla. 1986), 497 So.2d 1188 (wrongful removal of corneas); Whitehair v. Highland Memory Gardens, Inc. (W.Va. 1985), 327 S.E.2d 438 (negligent disinterment). Secondly, when the body is harmed, the survivor's plans for disposition of the body may be altered or made impossible. See, e.g., Courtney v. Saint Joseph Hospital (Ill. App. 1 Dist. 1986), 500 N.E.2d 703 (refrigerator malfunction leaves body unfit for open casket wake and funeral); Thompson v. Duncan Bros. Funeral Homes, Inc. (N.Y. Co. 1982), 455 N.Y.S.2d 324 (negligent embalming leaves body decomposing, leaking fluid, and odoriferous).

Historically, courts have required that physical injury accompany mental disturbance in order to recover under negligence causes of action. <u>Prosser and Keeton On the Law of Torts</u> (W. Page Keeton et al., (5th Ed. 1984) § 54, page 361) (Prosser). Prosser concludes, however, that cases involving negligent mishandling of a corpse are special and that many dead body cases, including negligent embalming, are likely to involve "genuine and serious

mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious."  Prosser, § 54, page 362.   The American Jurisprudence (2d) (Am.Jur.) provides that:

> Courts have, to a great extent, based civil liability for wrongful acts with regard to a dead body on the interference with the right of burial. Thus, the courts have generally recognized that interference with the right of a person to bury the body of his spouse or kin is an actionable wrong . . . .

22A Am.Jur.2d Dead Bodies § 35 (1965).  The decisions cited by the Am.Jur. involve physical manifestations or harm to the decedent's body that directly affect the availability of an open casket viewing or funeral.  These include mud and water damage to the body (Lamm v. Shingleton (N.C. 1949), 55 S.E.2d 810) and lack of refrigeration causing body decay (Courtney v. Saint Joseph Hospital (Ill. 1986), 500 N.E.2d 703).  Many dead body cases fall into categories, such as improper delivery and transport of bodies (including loss); mutilation, dissection, and removal of body parts; unauthorized autopsies; wrongful interment and wrongful disinterment (and reinterment)  See generally 22A Am.Jur.2d Dead Bodies §§ 37-39.

Based on our holding in Sacco and the foregoing discussion, we hold that one who negligently removes, withholds, mutilates, embalms, provides funeral, burial, or crematory services, or operates upon the body of a dead person or prevents its proper interment or cremation is subject to liability to the deceased person's close relatives for resulting emotional distress.  This negligent infliction of emotional distress shall be appraised based

8

on the test established in Sacco and adopted above. See Sacco, Slip Op. at 30-34.

Standing to Sue

In the instant case, the District Court concluded that "[a] corpse is considered quasi-property and can not be owned by a family member." 22 Am.Jur.2d Dead Bodies §§ 2 and 3. This quasi-property delineation has been used in other jurisdictions to establish standing to assert the cause of action for negligent mishandling of a corpse. We reject the quasi-property approach and general rule that standing is limited to the person who had the legal right to the disposition of the body. In Carney v. Knollwood Cemetery Assn. (Ohio App. 1986), 514 N.E.2d 430, 434-35, the Ohio court reasoned that plaintiffs in mistreated body cases do not seek to vindicate any "quasi property right" but rather sue because of mental anguish caused by "the realization that disrespect and indignities have been heaped upon the body of one who was close to [them] in life." The Wisconsin Supreme Court has held that:

> The basis for recovery of damages is found not in a property right in a dead body but in the personal right of the family of the deceased to bury the body. The mutilating or disturbing of the corpse is held to be an interference with this right and an actionable wrong.
> The law is not primarily concerned with the extent of physical injury to the bodily remains but with whether there were any improper actions and whether such actions caused emotional or physical suffering to the living kin. The tort rarely involves pecuniary injury; the generally recognized basis of damages is mental suffering.

Scarpaci v. Milwaukee County (Wis. 1980), 292 N.W.2d 816, 820-21.

The Idaho Supreme Court has held that, after cremated remains were discovered not to be those of the decedent, the spouse was

9

able to recover but the son could not recover because he was not the surviving spouse or next surviving kin. Brown v. Matthews Mortuary, Inc. (Idaho 1990), 801 P.2d 37, 45. In contrast to the Idaho court, the California Supreme Court concluded that mortuary services are performed for the benefit of family members other than the contracting party or person responsible for disposition of the decedent's body. Christensen v. Superior Court (Cal. 1991), 820 P.2d 181, 191. The mortuary in *Christensen* "assumed a duty to the close relatives of the decedents for whose benefit they were to provide funeral and/or related services. They thereby created a special relationship obligating them to perform those services in the dignified and respectful manner the bereaved expect of [a mortuary1 ." *Christensen,* 820 P.2d at 193.

The court in *Christensen* stated:

> The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and *involves* the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm. [Citation omitted.]

*Christensen,* 820 P.2d at 194. In the instant case, the children and grandchildren of the decedent sued based on their emotional distress. The grandchildren testified that they had been raised as children by Cuellar. We hold that both the children and grandchildren, as "close relatives," have standing to sue.

Michelotti-Sawyers further argues that only those parties who

10

actually *saw* the stain on the body should be allowed to recover. This is an unreasonable and arbitrary limitation. Upholding such a rule would create an immunity that could protect mortuaries from their egregious conduct while barring recovery to those persons possibly suffering the greatest harm. Christensen, 820 P.2d at 191. It is reasonable that a family member would become emotionally distressed after learning of, but not seeing, a debasing, humiliating, or disrespectful act committed to the decedent's body. Concluding otherwise would act as a shield to those mishandling or abusing the decedent's body as part of the body's preparation for burial, cremation, etc. Regarding seeing the misconduct to the body, the California Supreme Court stated:

> When misconduct in the provision of funeral-related services occurs in secret and its consequences are not apparent to members of the decedent's family, permitting recovery for the emotional distress suffered by all close family members for whom mortuary services are performed when the misconduct comes to light, regardless of which family member held the statutory right or actually contracted for the services, should be allowed.

*Christensen*, **820** P.2d at 193.' In the instant case, only three of the Appellants actually saw the stain. We hold that a party need not necessarily see the actual injury to the decedent's remains to maintain standing to sue for the resulting emotional distress. We further adopt the reasoning applied in *Christensen* that the decedent's close family members, for whom the funeral services were intended, have standing to sue.

Applying this standard to the Appellants' **claims,** we hold that the District Court improperly granted Respondents' motion for summary judgment.

11

May emotional distress damages be recovered in a breach of contract action?

Appellants acknowledge that recovery for emotional distress damages is not normally permitted in a breach of contract action but argue that mortuary contracts are so unique as to warrant recovery for contracting parties and the decedent's family. We disagree.

Section 27-1-310, MCA, provides that:

> Damages **for emotional or mental distress prohibited in contract actions -- exception.** In an action for breach of an obligation or duty arising from contract, recovery is prohibited for emotional or mental distress, except in those actions involving actual physical injury to the plaintiff. Emotional or mental distress, as used in this section, includes mental anguish or suffering, sorrow, grief, fright, shame, embarrassment, humiliation, anger, chagrin, disappointment, or worry.

This statutory language clearly prohibits the recovery Appellants seek. We have held that in computing damages resulting from breach of contract, "mental anguish is not, as a general rule, allowed . . . the courts evidently believe that the mental suffering which accompanies a breach of contract is too remote for compensation." Meech v. Hillhaven West, Inc. (1989), 238 Mont. 21, 49, 776 P.2d *488, 505; citing* 22 Am.Jur.2d Damages § 195 (1965). Citing § 27-L 310, MCA, we further noted that "Montana follows the general rule by prohibiting damages for emotional or mental distress in most contract actions." *Meech,* 776 P.2d at 505. This issue is controlled by statute: We hold that Appellants may not recover for emotional distress in a pure contract claim.

May Appellants Recover Contract Damages?

Breach of Contract

Appellants argue that the failure to properly embalm and/or the presenting of the body for viewing in a stained condition was a breach of contract.  In granting summary judgment against Appellants' claim for contract damages, the District Court concluded that Maria was refunded the embalming costs, that Appellants were satisfied with the remainder of the funeral and burial, and that Appellants failed to present identifiable claims for economic damages arising from the incident.  We hold that whether or not there was a breach of contract is a question properly decided by the finder of fact.

There is no dispute that Maria was the only family member to have contact with Michelotti-Sawyers and the only Appellant to sign a contract with Dahl.  Respondents do not deny that Maria formed an oral contract with Michelotti-Sawyers and a proper written contract with Dahl.  Further, Respondents refunded to Maria all embalming costs.  Appellants, however, argue that the leak and stain were a detriment to the entire funeral and therefore the damages are not limited to the costs of embalming.

Section 27-1-311, MCA, defines breach of contract as follows:

> For the breach of an obligation arising from contract, the measure of damages, except when otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment which was proximately caused thereby or in the ordinary course of things would be likely to result therefrom. Damages which are not clearly ascertainable in both their nature and origin cannot be recovered for a breach of

13

contract.

The issue becomes whether the leak and resultant stain sufficiently "damaged" the funeral such that the contract was breached. It is for the trier of fact to determine whether or not the leak and stain resulted in an actual detriment compensable **by damages, as** established by § 27-l-311, MCA.

<u>Standing for Breach of Contract Claims</u>

Appellants argue that each Appellant established an individual contract with Respondents and therefore, each is entitled to recover damages for breach of contract. We disagree.

Appellants contend that Maria acted as an agent for the other Appellants when she contracted with each Respondent. Montana statute defines agency by the following relevant statutes:

> **28-10-101. Definitions of agent and agency. An** agent is one who represents another, called the principal, in dealings with third persons. Such representation is called agency.
>
> . . . .
>
> **28-10-103. Actual versus ostensible agency. An** agency is either actual or ostensible. An agency is actual when the agent is really employed by the principal. An agency is ostensible when the principal intentionally or by want of ordinary care causes a third person to believe another to be his agent who is not really employed by him.
>
> . . .
>
> **28-10-201. How agency may be created.** An agency may be created and an authority may be conferred by a precedent authorization or a subsequent ratification.

By the nature of their claims, Appellants assert that Maria represented the other family members (principals) in dealing with

14

the Respondents (third persons).  Appellants do not allege an actual agency or a subsequent ratification.

"Where the undisputed evidence concerning the status of the parties defendant to each other is reasonably susceptible of but a single inference, the question of their legal relationship . . is one purely of law."  Estates of Milliron v. Francke (1990), 243 Mont. ZOO, 204, 793 P.2d 824, 827.  Appellants failed to present sufficient evidence to give rise to a genuine issue of material fact regarding an agency relationship between Maria and the other Appellants.  *See Estates of Milliron, 793 P.2d at 827.*  Appellants cite evidence in the record that both Respondents were aware that the Appellants had pooled their funds to pay for the funeral. Respondents do not contest Appellants' assertion that each Appellant contributed to the costs of funeral expenses.  These facts, however, are not sufficient to establish an agency relationship.  Because only Maria established a contract with Respondents, we hold that only Maria may maintain a claim for breach of contract.

THE LIABILITY OF DAHL FUNERAL CHAPELS

Dahl contends that since the allegedly negligent embalming was conducted by Michelotti-Sawyers, Dahl cannot be held liable under a negligence theory or breach of contract theory.  Appellants, however, contend that Dahl assumed a duty to properly prepare the body for viewing during the funeral services and Dahl breached that duty when it negligently failed to inspect the body and discover the leaking surgical wound.  We hold that both Dahl and Michelotti-

15

Sawyers assumed a duty to perform embalming and/or funeral services in a dignified and respectful manner.

Reversed in part, affirmed in part, and remanded for further proceedings consistent with this opinion.

_____
Justice

We concur.

_____
Chief Justice

_____

_____

_____

_____
Justices

Justice Fred J. Weber specially concurs and dissents as follows:

The problem area for me is raised by the following portion of Issue I of the opinion:

> Based on our holding in <u>Sacco</u> and the foregoing discussion, we hold that one who negligently removes, withholds, mutilates, embalms, provides funeral, burial, or crematory services, or operates upon the body of a dead person or prevents its proper interment or cremation is subject to liability to the deceased person's close relatives for resulting emotional distress.

In the beginning of the holding, the opinion states that it is based on the foregoing discussion, which does refer to various authorities in connection with negligent treatment of a decedent's body. The first of such references speaks of impacts to the living which result from mistreatment of decedent's body, such as situs of harm to the body and the impact to the survivors who are aware of such harm. The cases cited are those involving wrongful removal of corneas, negligent disinterment, and also cases where the body has been harmed by interfering with the disposition of the body--such as refrigerator malfunction, negligent embalming, leaving body unfit for funeral service and burial because of body decomposition. None of such facts are present in this case.

Next reference is made to 22 Am.Jur.2d, <u>Dead Bodies</u>, § 37, which emphasizes that courts have based liability on wrongful acts with regard to a dead body on the interference with the right of burial--again in this case there has been no actual interference with the right of burial. The decisions cited by Am.Jur. involved harm to the body which directly affects the availability of open casket viewing, including mud and water damage to the body, lack of

17

refrigeration causing body to decay, loss of body, mutilation, dissection, and removal of body parts, unauthorized autopsies, and wrongful interment and wrongful disinterment. Again, I emphasize that these cases involve physical manifestations or harm to the body which interfere with the right of burial. Such facts are not present in this case.

In the present case, there has been at most negligent embalming and negligent display of such negligently embalmed body. Those facts go beyond any of the authority upon which we state we are relying. I agree with the holding of the opinion to the extent that it does grant recovery under the specific facts of this case. However, I do not agree with the very broad holding as above quoted.

In substance, I believe we should hold that the party who negligently embalmed the body by failure to close a surgical incision and thereby prevent leaking of embalming fluid, and one who negligently displays such negligently embalmed body, are subject to liability to the deceased person's close relatives for resulting emotional distress. I believe our holding should be limited to the specific facts present in this case as we are in fact going further than the cases upon which we rely.

I specifically dissent from the holding to the extent that it holds that one who negligently removes, withholds, mutilates, provides funeral, burial, or crematory services, or operates upon the body of a dead person or prevents its proper interment or cremation, is subject to liability. While I would agree that

certain of these types of conduct are subject to liability under the foregoing authority, those facts are not presently before us and our statements are essentially dicta. In particular, I dissent from the key aspect of such holding which can be boiled down to a holding that one who negligently provides funeral services is subject to liability. At that point, all the rest of the standards are eliminated and we have gone far beyond any of the authority upon which we rely.

I would therefore **limit** the holding in this case as above specifically set forth. I concur with the remaining parts of the opinion.

_____
Justice

19