236 P.3d 4 (2010)
Denise BOORMAN, an individual and as the personal representative of Richard Leslie Francis Boorman; Billy Christian Boorman, a minor; Dean Alfred Boorman; Rita Van Ingen; Diane Goodwin; and Gemma Barker, Appellants,
v.
NEVADA MEMORIAL CREMATION SOCIETY, INC., a Nevada corporation formerly identified as Nevada Funeral Service; Steve Allen; Clark County; Clark County Coroner's Office; and Monique Beverley, Respondents.
No. 52492.
Supreme Court of Nevada.
July 29, 2010.
*5 John S. Rogers, Las Vegas; Capp & Marsh and Jonathan C. Capp, Oceanside, California, for Appellants.
David Roger, District Attorney, and Laura C. Rehfeldt, Deputy District Attorney, Clark County, for Respondents Clark County, Clark County Coroner's Office, and Monique Beverley.
Freeman Law Firm and Robert W. Freeman Jr., Henderson, for Respondents Nevada Memorial Cremation Society and Steve Allen.
Before the Court En Banc.

OPINION
By the Court, PARRAGUIRRE, C.J.:
The United States District Court for the District of Nevada certified ten questions relating to causes of action for the alleged negligent handling of a deceased person's remains.[1] The first three questions generally ask us to decide who may assert a cognizable emotional distress claim for the alleged negligent handling of a deceased person's remains and to determine the necessary requirements to assert such a claim, without distinguishing between the defendant actors involved in this action. Because our answer necessarily depends upon identifying the alleged negligent actor, we must re-craft those questions to focus on the two actors involveda mortuary and the county coroner. As a result of this re-crafting, we do not view it necessary to separately answer the questions relating to a county coroner's duty not to lose, misplace, or misappropriate the deceased person's organs. In our view, the question of whether a county coroner owes duty not to lose, misplace, or misappropriate a deceased person's organs is consumed within the question of whether the county coroner owes a duty not to negligently handle a deceased person's remains.
*6 We therefore rephrase the ten certified questions to focus on three primary inquires.[2]See, e.g., Palmer v. Pioneer Inn Assocs., Ltd., 118 Nev. 943, 945, 59 P.3d 1237, 1238 (2002) (rephrasing certified questions under NRAP 5).
The first primary inquiry focuses on the mortuary. Specifically, what relationship must a plaintiff have to a deceased person to assert a cognizable emotional distress claim related to the alleged mishandling of the deceased person's remains by a mortuary? Must the plaintiff observe or have some sensory perception of the act causing insult to their loved one's remains? And must the plaintiff demonstrate physical impact or serious emotional distress causing physical injury or illness?
The second primary inquiry is much like the first but focuses on the county coroner. Specifically, what relationship must a plaintiff have to a deceased person to assert a cognizable emotional distress claim related to the alleged mishandling of the deceased person's remains by a county coroner? Must the plaintiff observe or have some sensory perception of the act causing insult to their loved one's remains? And must the plaintiff demonstrate physical impact or serious emotional distress causing physical injury or illness?
The third primary inquiry is whether a claim for conversion of a deceased human body or its parts exist under Nevada law.
We answer these three questions as follows. First, close family members who were aware of the death of a loved one and to whom mortuary services were being provided may assert an emotional distress claim for the negligent handling of a deceased person's remains against a mortuary. Those persons do not need to observe or have any sensory perception of the offensive conduct, and do not need to present evidence of any physical manifestation of emotional distress. Second, the only person who may assert an emotional distress claim against a county coroner for the negligent handling of a deceased person's remains is the person with the superior right to dispose of the decedent's body. That person does not need to observe or have any sensory perception of the offensive conduct, and does not need to present evidence of any physical manifestation of emotional distress. Third, a claim for conversion of a deceased human body or its parts does not exist under Nevada law.

FACTS AND PROCEDURAL HISTORY
These certified questions arise from a federal district court action brought by appellants Denise Boorman (Richard Boorman's mother) and other family members (collectively, Boorman) against respondents Nevada Memorial Cremation Society (the mortuary), Clark County, and the employees of both entities, for returning Richard Boorman's (Richard) body to England without its internal organs.
Richard, a 29-year-old from London, England, died from what appeared to be an excessive consumption of alcohol and drugs while he was vacationing in Las Vegas for a bachelor party. Following his death, his body was transported to the Clark County Coroner for an autopsy, where the county coroner removed the internal organs for examination. The county coroner contends that the organs were then placed in a plastic bag between Richard's legs, and that after the autopsy was complete, Richard's body and its internal organs were sent to the mortuary. After the mortuary embalmed Richard's body, it sent his remains back to England.
Upon receipt of his body, Boorman contends that the English authorities opened up Richard's body cavity to discover that all the internal organs had been removed and replaced with a rolled up cloth sheet. To date, Richard's organs have not been located.
Based upon these facts, Boorman filed an action in United States District Court for the District of Nevada alleging, among other things, that respondents were liable for claims of emotional distress, breach of fiduciary duty, and conversion for the negligent handling of Richard's body. The federal district *7 court concluded that no controlling Nevada authority existed with regard to Boorman's claims and certified ten questions for this court to answer, which we accepted.[3]

DISCUSSION

Inquiry related to the mortuary
Boorman argues that close family members who are aware that mortuary services are being performed should have standing to assert an emotional distress claim for the alleged negligent handling of a deceased person's remains. Boorman further argues that those persons need not observe the offending acts or demonstrate any physical manifestation to succeed on such a claim. We agree.
This court has never had the opportunity to address the specific factual scenario raised in appellants' federal complaint. While we have recognized that an individual may have a cause of action for emotional distress in other contexts, see, e.g., Barmettler v. Reno Air, Inc., 114 Nev. 441, 447-48, 956 P.2d 1382, 1386-87 (1998) (concluding that direct victims of negligent conduct may bring a claim for emotional distress); Grotts v. Zahner, 115 Nev. 339, 340, 989 P.2d 415, 416 (1999) (recognizing witness-bystander claims for emotional distress), we have never been presented with the opportunity to discuss the scope of an emotional distress claim resulting from the alleged negligent handling of a deceased person's remains.
Although we have not addressed this issue in Nevada, the negligent handling of a deceased person's remains is a commonly recognized tort. For example, the California Supreme Court addressed this issue in Christensen v. Superior Court, which is helpful to our discussion. 54 Cal.3d 868, 2 Cal. Rptr.2d 79, 820 P.2d 181 (1991).
In Christensen, friends and relatives of the decedent brought an emotional distress cause of action against a mortuary and crematory for negligently and intentionally mishandling the deceased's remains. See id. at 184-85 (alleging that mortuary and crematory defendants harvested decedent's body parts and organs). In determining the class of persons who may assert such a claim, the California Supreme Court rejected the limitation that only those persons who have the statutory right to control the disposition of the body and who contract for its disposition may assert an emotional distress claim. Id. at 183. That class of persons "is not a reliable indicator of the family members who may suffer the greatest emotional distress if the decedent's remains are mishandled." Id. at 191.
Instead, the Court reasoned that "[o]ne of several children of the decedent may arrange for the services on behalf of all siblings, as well as a surviving spouse or parent of the decedent [and, i]f so, the crematory or mortuary assumes a duty to all of these family members."[4]Id. at 191. By undertaking such a duty, mortuary and crematory operators "create[ ] a special relationship obligating them to perform [funeral] services in the dignified and respectful manner the bereaved expect...." Id. at 193. Therefore, the Court concluded that such a defendant owes a duty to "close family members who were aware that funeral and/or crematory services were being performed, and on whose behalf or for whose benefit the services were rendered." Id. at 183.
We are persuaded by the California Supreme Court's reasoning in Christensen as it relates to what class of person may assert an emotional distress claim against a mortuary.
Unlike the duty of a county coroner, which we discuss in the next section, a mortuary voluntarily undertakes a duty to competently prepare the decedent's body for the benefit of the bereaved. See Christensen, 2 Cal. *8 Rptr.2d 79, 820 P.2d at 193. While we must limit liability at some point, and thus conclude that a mortuary's duty does not run to all persons potentially affected by the decedent's passing, such as close friends and distant relatives, we cannot conclude that a mortuary only owes a duty to the person with the right to dispose of the body.
Limiting recovery for emotional distress damages to the person with the right to dispose of the body would be an arbitrary delineation. See id. at 191. Certainly, in some instances the person with the right to dispose of the body would arguably suffer emotional distress upon learning about the negligent treatment of a loved one's body. However, in many other instances, a close family member who is not the person with the right to dispose of the body may be more affected by such negligent conduct. Therefore, we conclude that close family members who are aware of both the death of a loved one and that mortuary services were being performed may bring an action for emotional distress resulting from the negligent handling of the deceased's remains.
We further conclude that persons who may assert such a claim do not need to observe or perceive the negligent conduct, or demonstrate any physical manifestation of emotional distress. Requiring a potential plaintiff to observe or perceive the negligent conduct would essentially grant immunity to persons who negligently handle a deceased's remains in many instances because the activities of a mortuary mostly occur behind closed doors. See Contreraz v. Michelotti-Sawyers, 271 Mont. 300, 896 P.2d 1118, 1122 (1995) (requiring a potential plaintiff to be present or observe the offending act "is an unreasonable and arbitrary limitation" and "[u]pholding such a rule would create an immunity that could protect mortuaries from their egregious conduct while barring recovery to those persons possibly suffering the greatest harm").
Also, our historical concern that emotional distress must be demonstrated by some physical manifestation of emotional distress is not implicated in this context. We need not question the trustworthiness of an individual's emotional anguish in cases involving desecration of a loved one's remains. See W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 54, at 362 (5th ed. 1984) ("[A group of cases eliminating the physical manifestation requirement] has involved the negligent mishandling of corpses ... [because there is] ... an especial likelihood of genuine and serious mental distress, ... which serves as a guarantee that the claim is not spurious."); Allen v. Jones, 104 Cal. App.3d 207, 163 Cal.Rptr. 445, 450 (1980) (concluding that "damages are recoverable... without physical injury for negligent mishandling of a corpse"); Brown v. Matthews Mortuary, Inc., 118 Idaho 830, 801 P.2d 37, 44 (1990) (exempting the physical manifestation of emotional distress requirement in cases involving the negligent handling of a deceased person's remains).
Therefore, while a plaintiff must allege some emotional disturbance resulting from the defendant's negligent conduct, there is no need to demonstrate any physical manifestation of that emotional distress. Ultimately, the determination of whether a close family member should be able to recover any damages in such an action is a question for the trier of fact.[5]

*9 Inquiry related to the county coroner

Despite our conclusion in the previous section, we cannot conclude that the duty of a county coroner is as expansive as the duty of a mortuary. Unlike a mortuary, which voluntarily undertakes a duty to perform funeral services on behalf of the bereaved, a county coroner is obligated by law to perform its services. See NRS 259.050(1) (requiring the coroner to "make an appropriate investigation" when there are "reasonable ground[s] to suspect that [a] death has been occasioned by unnatural means"). The county coroner does not create a special relationship nor does he or she undertake any particular duty to the bereaved to prepare the deceased's body for funeral services.[6] Rather, the county coroner's duty is to investigate the cause of death and, so performing its duty, there may be instances where a county coroner needs to examine the body or its parts.[7]
Nevertheless, a county coroner is not completely absolved from any liability. A county coroner has a narrow limited duty to account for a deceased person's remains and may be held liable for emotional distress to the person with the right to dispose of the deceased's body for negligently handling a deceased person's remains.
We find the Arizona Court of Appeals' decision in Morton v. Maricopa County, 177 Ariz. 147, 865 P.2d 808 (Ariz.Ct.App.1993), particularly helpful to our decision. In Morton, the court recognized that a county coroner owed a duty not to negligently prevent the proper interment or cremation of a deceased's body but that the duty was only owed to the person with the right to dispose of the deceased's body. Id. at 812. The Morton court quoted section 868 of the Restatement (Second) of Torts in recognizing that a county coroner could be held liable:
"One who intentionally, recklessly or negligently removes, withholds, mutilates or operates upon the body of a dead person or prevents its proper interment or cremation is subject to liability to a member of the family of the deceased who is entitled to the disposition of the body."
Morton. 865 P.2d at 812 (quoting Restatement (Second) of Torts § 868 (1979)). The Morton court further acknowledged that "`[t]here is no need to show physical consequences of the mental distress.'" See id. at 812 n. 2 (quoting the Restatement (Second) of Torts § 868 cmt. a).
We agree with Morton and the Restatement (Second) of Torts section 868 that the only person who can assert an emotional distress claim against a county coroner in this context is the person with the right to dispose of the body. While the only person who may assert this claim is the person with the right to dispose of the body, the remaining elements required to prevail on this claim are the same as those relating to an emotional distress claim against a mortuarythe person need not perceive the offending act or demonstrate any physical manifestations of emotional distress.

Does a claim for conversion of a deceased human body or its parts exist under Nevada law?
A claim for conversion of a deceased human body or its parts does not exist under Nevada law.
Conversion is defined as "a distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with his title or rights therein or in derogation, exclusion, or defiance of such title or rights." Evans v. Dean Witter Reynolds, Inc., 116 Nev. 598, 606, 5 P.3d 1043, 1048 (2000) (internal quotations omitted). Thus, the essential question before us is whether a deceased human body or its parts *10 is "personal property" in order to support a claim for conversion.
Consistent with the majority of jurisdictions that have addressed this issue, we cannot conclude that there is a property right in a deceased human body or its remains. See, e.g., Shults v. U.S., 995 F.Supp. 1270, 1275-76 (D.Kan.1998) (construing that Mississippi law did not support a claim for conversion and noting that "the partial remains of a human body[ ] has no compensable value"); Culpepper v. Pearl Street Bldg., Inc., 877 P.2d 877, 882 (Colo.1994) ("We formally reject the fictional theory that a property right exists in a dead body that would support an action for conversion."); Walser v. Resthaven, 98 Md.App. 371, 633 A.2d 466, 477 (Md. Ct.Spec.App.1993).[8] Concluding otherwise may create morbid consequences, setting up an incentive for the person with the right to the disposition of the body to sell his or her loved one's remains for profit. We therefore answer this question, in the negative and conclude that Nevada law does not recognize a claim for conversion of a deceased human body or its parts.
We therefore answer the certified questions as set forth above.
We concur: HARDESTY, DOUGLAS, CHERRY, SAITTA, GIBBONS and PICKERING, JJ.
NOTES
[1] The ten certified questions were presented to us as follows:

1. What relationship must a plaintiff have to a deceased person to assert a cognizable emotional distress claim related to the alleged mishandling of the deceased person's remains?
2. In asserting such a claim, must the plaintiff demonstrate physical impact or serious emotional distress causing physical injury or illness?
3. In asserting such a claim, must the plaintiff observe or have some sensory perception of the act causing insult to their loved one's remains?
4. Does a county coroner's office owe a duty to the family members of a deceased individual not to lose, misplace, or misappropriate the deceased person's organs such that the county coroner's office could be liable for emotional distress claims?
5. If the answer to question four is yes, to what class of persons is such a duty owed?
6. Does a county coroner's office owe a fiduciary duty to the family members of a deceased individual not to lose, misplace, or misappropriate the deceased person's organs, or to inform the family members about the whereabouts of such organs?
7. If the answer to question six is yes, to what class of persons is such a duty owed?
8. Does a claim for conversion of a deceased human body or its parts exist under Nevada law?
9. If the answer to question eight is yes, what class of persons may bring such a claim?
10. If the answer to question eight is yes, may such a plaintiff recover emotional distress damages arising out of the conversion of the human remains?
[2] In its certification order, the federal district court noted that it did "not intend its framing of the questions to limit [this court's] consideration of the issues."
[3] We note that respondents Nevada Memorial Cremation Society and its employees have failed to participate in this matter.
[4] The Court further stated that

[t]here is no reason to assume that a person who makes the arrangements is any more susceptible to emotional distress if the services are not competently performed than are the other family members. Indeed, in light of the emotional impact of the death of a close family member of the bereaved, it may be the relative least affected who is chosen by the family to represent them in arranging for funeral and related services.
Id. at 191.
[5] Similar to our resolution of this issue, the American Law Institute is drafting a new section in the Restatement (Third) of Torts: Liability for Physical and Emotional Harm addressing this situation, which currently reads:

An actor whose negligent conduct causes serious emotional disturbance to another is subject to liability to the other if the conduct:
...
(b) occurs in the course of specified categories of activities, undertakings, or relationships in which negligent conduct is especially likely to cause serious emotional disturbance. Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 46 (Tentative Draft No. 5, 2007). The tentative draft Restatement limits recovery under this tort to a class of persons "in the relationship or those for whom the undertaking or activity was being performed...." Id. § 46 cmt. b. The tentative draft does not mention any requirement that the person bringing the claim must observe or perceive the negligent conduct. This rule is not limited to cases in which there are physical manifestations; the only requirement is that the potential plaintiff demonstrate serious emotional distress. See id. § 46 cmt. g.
[6] Because a county coroner does not create a special relationship with family members of the deceased, we answer the question of whether a county coroner owes a fiduciary duty not to lose, misplace, or misappropriate a deceased person's organs, or to inform family members of the organs' whereabouts, in the negative.
[7] For example, a coroner may need to dissect a deceased's organs and dispose of body parts after the investigation. While a bereaved may be emotionally upset that the deceased body is not returned with all of its organs, the county coroner cannot be held liable for carrying out the duties of his or her job.
[8] While some jurisdictions have adopted the theory that a person has a "quasi-property" right to a deceased human body or its remains for burial purposes, most of those jurisdictions have refused to apply that theory to support a claim for conversion of a deceased human body or its parts. See, e.g., Colavito v. New York Organ Donor Network, Inc., 356 F.Supp.2d 237, 244 (E.D.N.Y.2005); Bauer v. North Fulton Medical Center, 241 Ga.App. 568, 527 S.E.2d 240, 244 (1999).