# IN THE SUPREME COURT OF THE STATE OF NEVADA

SOUTHERN NEVADA ADULT
MENTAL HEALTH SERVICES,
Appellant,
vs.
JAMES FLAVY COY BROWN, ON
BEHALF OF HIMSELF AND ALL
THOSE SIMILARLY SITUATED,
Respondent.

No. 78770



FILED

NOV 1 7 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## ORDER OF REVERSAL

This is an appeal from a district court judgment after a jury trial in a class action medical malpractice lawsuit. Eighth Judicial District Court, Clark County; Mark R. Denton, Judge.

*Background*

In 2014, respondent James Flavy Coy Brown and other class members asserted claims for negligence, negligence per se, and medical malpractice, among others, against appellant Southern Nevada Adult Mental Health Services (SNAMHS) and several nonparties to this appeal in state court.[1] These nonparty defendants included state employees in

---

[1]Brown first filed a class action in federal court based on the same underlying facts relevant to this case asserting both federal and state law claims. The federal court dismissed all of the federal law claims with prejudice as a sanction under Federal Rule of Civil Procedure 41(b) and dismissed all state law claims based on the absence of remaining federal claims, and a three-judge panel from the United States Court of Appeals for the Ninth Circuit affirmed the dismissal. *Brown v. S. Nev. Adult Mental*

21-33059

their official capacities and several SNAMHS employees. Brown claimed that SNAMHS and its employees involuntarily discharged him and other class members who were patients at Rawson-Neal Psychiatric Hospital,[2] sending them out of state on a Greyhound bus without a plan in place for follow-up treatment or housing arrangements upon their arrival to their destinations. This discharge practice is referred to by Brown as "Greyhound therapy." In Brown's prayer for relief, he requested, among other things, class certification, a permanent injunction to prevent the defendants from continuing "Greyhound therapy," declaratory judgment that the defendants violated Brown's and the other class members' rights under Nevada law, and damages.

Throughout the proceedings, the other defendants were dismissed or summary judgment was granted in their favor such that only SNAMHS and some of its employees remained parties to the case. Before trial, SNAMHS and the remaining defendants filed a motion for summary judgment, which the district court granted in their favor on all claims except negligence and negligence per se. In that order, the district court also specifically found that, "[e]xcept for medical malpractice and conspiracy [on which summary judgment was granted], Plaintiff Brown did not name

_____

*Health Servs.*, No. 2:13-CV-1039 JCM (PAL), 2014 WL 3721339, at *3 (D. Nev. July 24, 2014), *aff'd sub nom. Brown v. Rawson-Neal Psychiatric Hosp.*, 840 F.3d 1146 (9th Cir. 2016).

[2]SNAMHS is the entity that operates the Rawson-Neal Psychiatric Hospital.

SNAMHS . . . in any of the other negligence claims."[3] Despite this finding, SNAMHS, over its objection, remained in the case and proceeded to trial.

During trial, the parties stipulated to awarding each class member the same amount of damages awarded to Brown as the class representative. The jury found SNAMHS and its administrator negligent and awarded $250,000 to Brown. Subsequently, the district court entered judgment in favor of each class member but reduced the amount of damages to the statutory cap of $100,000 per class member. The court also issued a mandatory injunction for a period of two years, enjoining SNAMHS from further engaging in "Greyhound therapy" discharge practices and requiring it to document and report its compliance on a quarterly basis. SNAMHS and its administrator filed several posttrial motions and, because the district court granted their motion for judgment notwithstanding the verdict as to the administrator, only SNAMHS remained liable.

SNAMHS now appeals, arguing that the district court erred by allowing Brown's negligence and negligence per se claims to proceed against SNAMHS at trial. SNAMHS also challenges the jury's award of damages to Brown, the district court's award of costs, and the district court's orders certifying the class and granting injunctive relief. Finally, SNAMHS contests the district court's determination that Brown's claims were not time-barred under NRS 41A.097(2) as medical malpractice claims rather than ordinary negligence claims.

---

[3]Brown does not challenge the district court's June 2018 summary judgment order on appeal.

*Brown did not plead negligence or negligence per se claims against SNAMHS*

SNAMHS argues that the district court erred when it allowed Brown's negligence claims to go to trial because Brown never asserted those claims against SNAMHS in his complaint. At first, the district court found in its June 2018 order that the only claims Brown had asserted against SNAMHS were civil conspiracy and medical malpractice, and it dismissed both of those claims in that order.[4] At trial, the district court reversed course and determined that Brown did assert these negligence claims against SNAMHS because he named SNAMHS as a defendant and used the term "defendants" throughout the facts section of the amended complaint, thus holding "it's implicit if not express in the pleadings." The reasoning for the district court's about-face may be gleaned from its ruling on SNAMHS's oral directed verdict motion. In that order, the district court found that SNAMHS could "be vicariously liable under the doctrine of

---

[4]While our dissenting colleague emphasizes that this was a "counsel-prepared" order, Dissenting op. at 12-13, it was signed by the judge and thus is the official ruling of the court, *Mortimer v. Pac. States Savs. & Loan Co.*, 62 Nev. 142, 153, 145 P.2d 733, 735-36 (1944) ("The formal written order signed by the court, must, we think, supersede the minute order entered by the clerk. It must be taken as the best evidence of the court's decision. The fact that it was prepared by appellant is of no consequence. A court is presumed to read and know what it signs. The practice of preparing entries for the court to sign and enter of record, is proper." (internal citations omitted)). Moreover, contrary to the dissent's implication, there is no reason for SNAMHS to have sought, or the court to have granted, summary judgment on the negligence and negligence per se claims which were never asserted against it as discussed in this order. SNAMHS did, however, identify in its motion the only claims that were asserted against it and successfully sought summary judgment on those claims.

SUPREME COURT
OF
NEVADA

(O) 1947A

*respondeat superior,*" and that Brown did not need to specifically identify or name as defendants the SNAMHS agents and employees who allegedly negligently discharged Brown and the class members.

Because the district court did not explain its reason for deviating from its findings in the June 2018 summary judgment order, we will treat its order denying SNAMHS's motion for directed verdict as an order amending its June 2018 order. *See* NRCP 54(b) (providing that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment"); *see also Arnold v. Kip*, 123 Nev. 410, 417, 168 P.3d 1050, 1054 (2007) (providing that this court "may consider the arguments asserted in the reconsideration motion in deciding an appeal from the final judgment" where a reconsideration order and motion are part of the record on appeal, and where the district court elected to entertain the motion on its merits). A district court's decision to reconsider its prior rulings is reviewed for abuse of discretion. *See Moore v. City of Las Vegas*, 92 Nev. 402, 405, 551 P.2d 244, 246 (1976) (stating that "the question whether to grant the second motion for rehearing was within the sound discretion of the district court").

We conclude that the district court abused its discretion when it ruled that SNAMHS continued to be a party in this case despite Brown's failure to assert his only remaining claims against it. "Nevada is a notice-pleading jurisdiction and [thus, we] liberally construe[ ] pleadings to place into issue matter which is fairly noticed to the adverse party." *Chavez v. Robberson Steel Co.*, 94 Nev. 597, 599, 584 P.2d 159, 160 (1978). However, parties are bound by their pleadings. *See Kingsbury v. Copren*, 43 Nev. 448, 455, 187 P. 728, 728 (1920), *reh'g denied*, 189 P. 676 (stating that "it

appeared from the complaint itself, as a matter of law, that there was no uncertainty as to the capacity in which plaintiff s[ought] to hold the defendant responsible" and that the plaintiff was "bound by the material allegations of her complaint").

In his amended complaint,[5] Brown asserted negligence specifically against several SNAMHS employees and unnamed Does 1 to 50, but he failed to mention SNAMHS.[6] Similarly, Brown only asserted his negligence per se claim against four unnamed social workers, but he did not mention SNAMHS.[7] This omission contrasts notably with Brown's medical malpractice and conspiracy claims in which he instead used the collective term "[d]efendants" without specifically listing them.[8] As such, a plain reading of Brown's amended complaint and who he identified as the defendants against whom he was seeking liability in each claim supports the district court's initial holding that Brown did not plead either negligence claim against SNAMHS, but rather, only claims for conspiracy and medical

---

[5]We note that Brown did not assert negligence or negligence per se claims against SNAMHS in his original complaint either.

[6]Indeed, Brown's negligence claim explicitly stated: "This Claim is asserted on behalf of Plaintiff and the Members of the Class *against Defendants SZKLANY*, in her individual [sic] (for damages); *RAVIN*, in his individual capacity (for damages); *GUPTA*, in his individual capacity (for damages); *WHITE*, in her individual capacity (for damages); *and DOES 1 TO 50*, in their individual capacities (for damages)." (Emphases added.)

[7]Brown's negligence per se claim explicitly stated: "This Claim is asserted on behalf of Plaintiff and the Members of Class he seeks to represent *against social workers, Defendants DOES 1 through 4*, inclusive, in their individual capacities (for damages)." (Emphasis added.)

[8]Brown's malpractice and conspiracy claims both stated: "*Defendants*, and each of them, including DOES 1-50 . . . . " (Emphasis added.)

malpractice. Moreover, Brown never sought leave to amend his complaint to name SNAMHS despite SNAMHS's repeated objections throughout the proceedings and even after trial. *Cf. Grouse Creek Ranches v. Budget Fin. Corp.*, 87 Nev. 419, 426-27, 488 P.2d 917, 922-23 (1971) (rejecting the argument that the district court erred because it granted judgment in favor of a party that moved to amend its pleadings to conform to the evidence related to an issue raised and tried at trial after the court had already entered judgment).

Further, neither the district court nor Brown asserted that there were new issues of fact or law related to this issue, which would justify rehearing. *See Moore*, 92 Nev. at 405, 551 P.2d at 246 ("Only in very rare instances in which *new issues of fact or law* are raised supporting a ruling contrary to the ruling already reached should a motion for rehearing be granted." (emphasis added)); *see also Masonry & Tile Contractors Ass'n of S. Nev. v. Jolley, Urga & Wirth, Ltd.*, 113 Nev. 737, 741, 941 P.2d 486, 489 (1997) ("A district court may reconsider a previously decided issue if substantially different evidence is subsequently introduced or the decision is clearly erroneous."). Therefore, the district court abused its discretion when it kept SNAMHS in the case after it issued its order granting summary judgment on all claims asserted against it. Accordingly, we reverse the district court's judgment against SNAMHS.

*Brown failed to establish damages*

Even if Brown had properly pleaded his negligence claims against SNAMHS, we further conclude that Brown failed to establish the damages element for these claims. SNAMHS argues that the jury's award of damages is unsupported by the record. The district court rejected SNAMHS's contention that Brown had failed to establish damages for his

negligence claims in its order denying SNAMHS's motion for directed verdict.

We "will affirm a damages award that is supported by substantial evidence." *Wyeth v. Rowatt*, 126 Nev. 446, 470, 244 P.3d 765, 782 (2010). "When considering a damages award, we presume that the jury believed the evidence offered by the prevailing party and any inferences derived from the evidence." *Id.* "Substantial evidence is 'that which a reasonable mind might accept as adequate to support a conclusion.'" *Quintero v. McDonald*, 116 Nev. 1181, 1183, 14 P.3d 522, 523 (2000) (quoting *Prabhu v. Levine*, 112 Nev. 1538, 1543, 930 P.2d 103, 107 (1996)).

A plaintiff must establish the damages element for both negligence and negligence per se claims. *Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.*, 125 Nev. 818, 824, 828, 221 P.3d 1276, 1280, 1283 (2009) (setting forth the elements of a negligence claim, including damages, and explaining that for a negligence per se claim, "[a] civil statute's violation establishes the duty and breach elements"). A showing of emotional distress may satisfy the damages element in some circumstances. *Shoen v. Amerco, Inc.*, 111 Nev. 735, 748, 896 P.2d 469, 477 (1995) (recognizing "that the negligent infliction of emotional distress can be an element of the damage sustained by the negligent acts committed directly against the victim-plaintiff").

Generally, "a plaintiff alleging negligent infliction of emotional distress [must] demonstrate some physical impact beyond conditions such as insomnia or general discomfort." *Sadler v. PacifiCare of Nev., Inc.*, 130 Nev. 990, 996-97, 340 P.3d 1264, 1268 (2014) (internal quotation marks omitted). However, this court has indicated that a showing of "serious emotional distress" could be sufficient, even absent a physical impact.

*Chowdhry v. NLVH, Inc.*, 109 Nev. 478, 483, 851 P.2d 459, 462 (1993) (concluding that the plaintiff failed to satisfy the physical impact requirement where "[n]o other evidence was presented of *serious emotional distress or* physical injury or illness" besides "[i]nsomnia and general physical or emotional discomfort" (emphasis added)).

More recently, we expressly declined to require litigants to "demonstrate any physical manifestation of emotional distress" in the context of a claim for emotional distress asserted by relatives of a decedent for the alleged negligent handling of the decedent's remains. *Boorman v. Nev. Mem'l Cremation Soc'y, Inc.*, 126 Nev. 301, 307-08 & n.5, 236 P.3d 4, 8 & n.5 (2010) (relying on Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 46 (Tentative Draft No. 5, 2007) (codified as amended at § 47 (Am. Law Inst. 2012))). Under the Restatement, a party whose conduct causes another "serious emotional harm . . . is subject to liability to the other if . . . the other [is] in danger of immediate bodily harm and the emotional harm results from the danger" or the other's serious emotional harm "occurs in the course of specified categories of activities, undertakings, or relationships." Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 47 (Am. Law Inst. 2012). Physical manifestations of emotional distress are not required for a plaintiff to have suffered "serious emotional harm." *Id.* at cmt. j. Instead, a plaintiff must demonstrate that a reasonable person would suffer serious emotional harm under similar circumstances and that "there [is] credible evidence that the plaintiff has suffered such harm." *Id.*

Here, Brown did not present any evidence of physical injury as a result of SNAMHS's negligence, and thus, he can only recover damages if physical injury is not required. Even if we were to apply the Restatement's

approach to allow recovery on a negligence claim based solely on emotional distress damages, Brown failed to demonstrate that he actually suffered serious emotional distress.[9] Although Brown presented evidence that a reasonable person who underwent "Greyhound therapy" would probably suffer serious emotional harm, there is no credible evidence that Brown actually suffered such harm. Brown did not testify that he was emotionally distressed. When asked directly by his own counsel how he was harmed, Brown did not assert that SNAMHS's discharge practice caused him to experience emotional distress nor did he describe any such emotional distress.

Although Brown argues that one of his expert witnesses, Kimberly Telesh, Ph.D., testified at trial that SNAMHS's discharge policies would worsen its patients' psychiatric symptoms, Dr. Telesh did not opine that Brown suffered serious emotional distress or that his alleged schizophrenia worsened because of the nature of his discharge from SNAMHS. At best, Dr. Telesh's testimony is speculative because she spoke generally of the possible and potential consequences of using a discharge policy like SNAMHS's "Greyhound therapy" on a psychiatric patient in

---

[9]Because the parties stipulated to awarding each class member the same amount the jury awarded to Brown, we do not consider the other class members' testimony about their damages in determining this issue. *Lehrer McGovern Bovis, Inc. v. Bullock Insulation, Inc.*, 124 Nev. 1102, 1118, 197 P.3d 1032, 1042 (2008) ("This court has recognized that [s]tipulations are of an inestimable value in the administration of justice, and valid stipulations are controlling and conclusive and both trial and appellate courts are bound to enforce them." (alteration in original) (internal quotation marks omitted)). Brown's failure to present evidence of any emotional distress *he* suffered cannot be cured by evidence presented as to other class members' emotional distress.

generic terms. *See Franchise Tax Bd. of Cal. v. Hyatt*, 133 Nev. 826, 865-66, 407 P.3d 717, 749 (2017) (stating that "[d]amages cannot be based solely upon possibilities and speculative testimony," even if the testimony is from an expert witness (internal quotation marks omitted)), *rev'd on other grounds by Franchise Tax Bd. of Cal. v. Hyatt*, 139 S. Ct. 1485, 1490 (2019).

Further, Brown also did not claim that his mental health condition had worsened or that he feared being treated for his alleged mental health condition in the future due to SNAMHS's discharge. *Cf.* Restatement (Third) of Torts: Physical and Emotional Harm § 47 cmt. k (Am. Law Inst. 2012) (providing that under certain circumstances courts have allowed recovery for emotional distress based on fear of future illness). Instead, Brown testified that after he was discharged from SNAMHS he ended up in California homeless and with no support upon arrival. But Brown's testimony also demonstrates that he experienced similar circumstances when he moved from South Carolina to Las Vegas, Nevada prior to entering SNAMHS. Brown also testified that after his discharge from SNAMHS he continued to receive mental health services in North Carolina, where he currently lives. He did not specify why he continued to receive treatment or provide any other evidence demonstrating his subsequent mental health condition or a worsening of his mental health as a result of SNAMHS's actions. Therefore, because there is no credible evidence that Brown suffered serious emotional harm due to SNAMHS's discharge practices, we conclude that Brown failed to establish the damages element of his claims. Thus, reversal is warranted on this ground as well. *See Quintero*, 116 Nev. at 1183, 14 P.3d at 523 (stating that we will uphold

the jury's findings only if those findings are "supported by substantial evidence").[10]

*Brown is not entitled to costs*

Having concluded that the judgment in favor of Brown for both his negligence and negligence per se causes of action must be reversed, Brown is no longer the prevailing party. *Golightly & Vannah, PLLC v. TJ Allen, LLC*, 132 Nev. 416, 422, 373 P.3d 103, 107 (2016) (stating that under NRS 18.020(3) and NRS 18.050, to be a "prevailing party," that party "must win on at least one of [his] claims"). As such, we further conclude that the district court abused its discretion when it awarded Brown costs. *See Albios v. Horizon Cmtys., Inc.*, 122 Nev. 409, 417, 132 P.3d 1022, 1028 (2006) (providing that attorney fees and costs may not be awarded "absent authority under a statute, rule, or contract"); NRS 18.020(3) (providing for an award of costs to the prevailing party in an action seeking damages in excess of $2,500); NRS 18.050 (providing district courts with discretion to apportion "part or all of the prevailing party's costs . . . between the parties"). As a result, we reverse the district court's award of costs to Brown.[11]

---

[10]While we agree with our dissenting colleague that the facts of this case are quite disturbing, we nevertheless must hold plaintiffs to their burdens of pleading and proof of their claims and we hold that they failed to meet these burdens.

[11]In light of our decision, we do not address the parties' remaining arguments. Additionally, because the injunction order has already expired, we conclude that this issue is moot. *See Univ. & Cmty. Coll. Sys. of Nev. v. Nevadans for Sound Gov't*, 120 Nev. 712, 720, 100 P.3d 179, 186 (2004) (recognizing that "cases presenting live controversies at the time of their

Accordingly, we

ORDER the judgment of the district court REVERSED.

_____, J.
Cadish

_____, J.
Herndon

cc:     Hon. Mark R. Denton, District Judge
        Lansford W. Levitt, Settlement Judge
        Attorney General/Carson City
        Attorney General/Las Vegas
        Lewis Roca Rothgerber Christie LLP/Las Vegas
        Allen Lichtenstein
        Law Office of Mark E. Merin
        Eighth District Court Clerk

---

inception may become moot by the occurrence of subsequent events"). To the extent any part of the injunction order has not expired, it is reversed as there is no longer a successful claim by plaintiffs on which to base it.

PICKERING, J., dissenting:

This is an appeal from a judgment holding appellant Southern Nevada Adult Mental Health Services (SNAMHS) liable in tort for the injuries its administrator, agents, and employees inflicted on respondent James Flavoy Brown—and others like him—when, after admitting Brown and administering emergency psychiatric care, it discharged him, still under the influence of psychotropic drugs, with no discharge plan beyond putting him on a Greyhound bus bound for California. At trial, Brown testified to his experience, including his arrival at the Sacramento Greyhound bus depot at night and how he slept outside under a trailer in the rain because he had no money, no phone, no one to call for help, and nowhere else to go. As compensation for his emotional distress, the jury awarded Brown $250,000, a sum the district court later reduced to $100,000. The majority reverses the district court's judgment, finding that Brown did not adequately plead his negligence and negligence per se claims against SNAMHS and that his testimony did not sufficiently establish that he suffered compensable emotional injury. It also declares that the injunction the district court entered has expired. I disagree on each of these points and therefore respectfully dissent.

*The pleadings adequately allege that SNAMHS is liable for the negligence and negligence per se of its administrator, agents, and employees*

"All pleadings shall be so construed as to do substantial justice." NRCP 8(f) (2017).[1] No technical forms are required. NRCP 8(e)(1). The

---

[1]The NRCP were amended effective March 1, 2019. *See In re Creating a Comm. to Update and Revise the Nev. Rules of Civil Procedure*, Docket No. ADKT 0522 (Order Amending the Rules of Civil Procedure, the Rules of

NRCP, like the FRCP, require the district court to construe pleadings in favor of, not against, the person pleading them. *See* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 1286, at 747-48 (3d ed. 2004). In civil cases, courts do not "require technical exactness in stating a claim for relief . . . or draw refined inferences against the pleader." *Id.* In fact, the exact opposite is true: "[A]s the [civil] case law makes very clear, the district court is obligated to make a determined effort to understand what the pleader is attempting to set forth and to construe the pleading in his or her favor, whenever the interest of justice so requires." *Id.* at 748-50 (footnote omitted).

The district court properly applied these principles when it determined that the first amended complaint (FAC) stated claims against SNAMHS for damages caused by its negligence and negligence per se and that of its administrator, Chelsea Szklany, and its other agents and employees.[2] Although SNAMHS professes surprise at being called to account on Brown's tort claims, SNAMHS was the principal defendant in the case. The FAC's caption lists SNAMHS as the first-named defendant. In its introductory allegations, the FAC identifies SNAMHS as a defendant,

---

Appellate Procedure, and the Nevada Electronic Filing and Conversion Rules, Dec. 31, 2018). Unless otherwise indicated, this dissent refers to the pre-amendment version of the NRCP, since that is what the district court applied. Current NRCP 8(e) updates NRCP 8(f)'s language but the mandate remains the same: "Pleadings must be construed so as to do justice."

[2]The negligence per se allegations derive from NRS 433A.400 and the FAC allegation that SNAMHS discharged patients who were indigent Nevada residents "not to the counties in the State of Nevada where they previously resided, but rather transported [them] to out-of-state locations."

describing it as "a mental health treatment operation licensed by the State of Nevada, which is also known as Rawson-Neal Psychiatric Hospital." Paragraph 2 of the FAC summarizes the core facts:

> Plaintiff BROWN, and the class of similarly situated persons he seeks to represent are former psychiatric patients at RAWSON-NEAL . . . who, while still in need of psychiatric care, were involuntarily discharged from the facility by Defendants and their agents and employees, and sent to out-of-state destinations where Defendants knew said patients would be unable to obtain proper treatment, care and housing. Plaintiff and the class he seeks to represent, were medicated before their discharge and required to leave the facility under the influence of powerful anti-psychotic tranquilizing medication. While plaintiffs were in a drugged, and sometime[s] psychotic state, and incompetent to give informed consent, pursuant to standard procedure, institution staff physically escorted them from the facility to waiting taxis bound for the Greyhound Bus Station in Las Vegas, Nevada. They were then directed and required to travel on pre-paid tickets which had been previously ordered and paid for by [defendant SNAMHS].

Paragraph 4 introduces "Defendant CHELSEA SZKLANY" as "the hospital administrator of SNAMHS" and alleges that she and other named and unnamed agents and employees of SNAMHS "under said Defendants' control and supervision, sent Plaintiffs, involuntarily, to out-of-state destinations at which no prior arrangements had been made for their follow-up care . . . without any money, without provisions for medical care, without any emergency phone numbers, without any written instructions or assistance of any kind." Paragraph 5 of the FAC continues:

Representative Plaintiff [BROWN] was discharged from RAWSON-NEAL, operated by Defendant SNAMHS, on February 11, 2013. He had been admitted on February 9, 2013, with a diagnosis of psychosis, hearing voices, and thinking of suicide. Defendants knew he was penniless and homeless and Defendants and each of them, as well as their agents and employees operating under their control and direction, knew or acted in reckless disregard of the fact that he would be unable to care for himself during the journey or upon his arrival. Before he was discharged Plaintiff BROWN was started on Thorazine, Cymbalta and Klonopin, all psychotropic medications which affect thinking and judgment. While Defendants and each of them and their agents and employees had purportedly developed a written treatment plan which included locating a group home placement and case worker for BROWN, this treatment plan was intentionally disregarded and violated by his involuntary discharge without any arrangements having been made for BROWN, contrary to the plan.

And in paragraph 46, the FAC alleges that "[t]he above described actions by Defendants, and each of them, caused . . . great psychological, physical and emotional suffering, degradation, pain, and injury . . . to Plaintiff BROWN and the class he seeks to represent."

Our civil pleading rules call for a "short and plain statement of the claim showing that the pleader is entitled to relief." NRCP 8(a). It is the facts alleged, not the legal theories identified, that determine a pleading's sufficiency and scope. *See Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (summarily reversing order granting summary judgment against civil rights plaintiffs who failed to invoke 42 U.S.C. § 1983 but who pleaded facts sufficient to support relief under that statute; citing FRCP 8(a) and

noting that the pleading rules "do not countenance dismissal of a complaint for [an] imperfect statement of the legal theory supporting the claim asserted"). If the FAC's allegations, partially excerpted above, had ended at paragraph 46 and gone straight to the prayer for damages—setting aside the medical malpractice issue on which SNAMHS focused in district court[3]—little question exists but that the pleading would have supported imposing liability on SNAMHS, directly or vicariously, for its negligence and negligence per se and/or that of its agents and employees. *See* Wright & Miller, *supra*, § 1219, at 277-78 (noting that the FRCP, on which NRCP are modeled, "effectively abolish the restrictive theory of the pleadings doctrine, making it clear that it is unnecessary to set out a legal theory for the plaintiff's claim for relief") (footnote omitted); *id.* at 280-81 ("A simple statement in sequence of the events which have transpired, coupled with a direct claim by way of demand for judgment of what the plaintiff expects and hopes to recover, is a measure of clarity and safety; and even the demand for judgment loses its restrictive nature when the parties are at issue, for particular legal theories of counsel yield to the court's duty to

---

[3]SNAMHS and its co-defendants devoted their pretrial motion practice primarily to arguing that Brown's claims were time-barred because they were for medical malpractice and not timely supported by the affidavit of merit NRS 41A.071 requires to plead such claims. The district court agreed that the statute of limitations ran on Brown's medical malpractice claims before he provided the required affidavit. But it held, consistent with *Szymborski v. Spring Mountain Treatment Center*, 133 Nev. 638, 403 P.3d 1280 (2017), that the FAC was not founded exclusively on allegations of medical malpractice but on ordinary negligence as well and that, since claims of ordinary negligence do not require an affidavit of merit, Brown could proceed on the latter.

grant the relief to which the prevailing party is entitled, whether demanded or not.") (quoting and discussing *Gins v. Mauser Plumbing Supply Co.*, 148 F.2d 974, 976 (2d Cir. 1945)).

The majority and SNAMHS do not suggest otherwise. The problem, and our difference of opinion, stems from the fact that the FAC proceeds past paragraph 46 to list a series of seven "claims," including, as relevant here, a "first claim" of "[n]egligence" and a "third claim" of "[g]ross [n]egligence, [n]egligence [p]er [s]e." In the majority's view, the allegations in the first and third claims restrict the parties defendant to them to individual named defendants and in so doing exclude SNAMHS.

I cannot agree. As support for limiting the first claim, the majority focuses on FAC paragraph 48, which alleges: "This claim is asserted on behalf of Plaintiff and the Members of the Class against Defendants SZKLANY, in her individual [capacity] (for damages); RAVIN, in his individual capacity (for damages); GUPTA, in his individual capacity (for damages); WHITE, in her individual capacity (for damages); and DOES 1 TO 50, in their individual capacities (for damages)." Read in isolation, paragraph 48 could limit the first claim to the individual named and unnamed defendants it lists, a kind of "expressio unius est exclusio alterius"—the expression of one thing is the exclusion of others—analysis. But paragraph 48 does not stand alone. Rather, the first claim spans paragraphs 47 through 54 of the FAC. And, in paragraph 47, "Plaintiff realleges and incorporates the allegations of the previous paragraphs of the complaint, to the extent relevant, as if fully set forth," thereby repeating the introductory allegations respecting SNAMHS and the actions it took through its agents and employees. Such incorporation by reference of prior

SUPREME COURT
OF
NEVADA

(O) 1947A

6

allegations is expressly permitted by NRCP 10(c)—"Statements in a pleading may be adopted by reference in a different part of the same pleading"—so paragraph 47 reintroduces all prior allegations in the FAC, including those against SNAMHS. Then, after paragraphs 48 (reprinted above and alleging negligence against certain named and unnamed employee-defendants) and 49 (which generally alleges the elements of negligence), paragraphs 50 through 54 refer to "Defendants," plural, adding detail, and end with the allegation, "As a direct and proximate result of the negligence and carelessness of Defendants, Plaintiff BROWN and the members of the class have suffered extreme physical, emotional and mental distress . . . for which they seek . . . damages."

The district court rightly considered and rejected SNAMHS's argument that paragraph 48 gave it an inexplicable free pass on the FAC's first claim. At most, paragraph 48 created ambiguity and, consistent with the rule requiring courts to construe pleadings in favor of the pleader, the district court properly construed the ambiguity in favor of Brown, not SNAMHS. More substantively, the district court read the FAC as seeking to hold SNAMHS vicariously liable for the direct negligence of its administrator SZKLANY, and other named and unnamed or "Doe" agents and employees. Importantly, vicarious liability does not require direct negligence on the part of the party being held to account. On the contrary, "[t]he vicariously liable party [need not have] committed any breach of duty to the plaintiff but is held liable simply as a matter of legal imputation of responsibility for another's tortious acts." Restatement (Third) of Torts: Apportionment of Liab. § 13 cmt. c (Am. Law Inst. 2000). Put differently, "[v]icarious liability is liability that a supervisory party bears for the

actionable conduct of a subordinate based on the relationship between the two parties. The supervisory party need not be directly at fault to be liable, because the subordinate's negligence is imputed to the supervisor." *McCrosky v. Carson Tahoe Reg'l Med. Ctr.*, 133 Nev. 930, 932-33, 408 P.3d 149, 152 (2017) (internal quotations omitted) (internal citations omitted); *see Schoolcraft v. City of New York*, 103 F. Supp. 3d 465, 538 (S.D.N.Y. 2015) (noting that "[v]icarious liability is not a type of claim, it is a theory of liability associated with state law claims"). This reading disambiguates the FAC and makes sense of all its allegations, including those in the first claim, by interpreting the FAC and its first claim as stating direct negligence claims against the named and unnamed or Doe employee-defendants mentioned in paragraph 48 and vicarious liability claims against SNAMHS based on their direct negligence.

The "third claim" for "[g]ross [n]egligence, [n]egligence [p]er [s]e" bears the same reading. Like the first claim, it "realleges and incorporates" all prior allegations in the FAC. Unlike the first claim, it does not mention any individuals by name, alleging instead, "This Claim is asserted on behalf of Plaintiff and the Members of Class he seeks to represent against social workers, Defendants DOES 1 through 4, inclusive, in their individual capacities (for damages)." It then proceeds to define gross negligence and to allege duty, breach, and damages against "*Defendants* and DOES 1 through 4, inclusive," (emphasis added), thereby including SNAMHS among the defendant parties sought to be held liable for negligence per se.

My colleagues in the majority dismiss this reading of the FAC as speculative. Majority op. at 6-7 n.8. In their view, the district court's

posttrial decision to grant judgment as a matter of law (JMOL) to Szklany and to dismiss the doctors and other named individual defendants before or (in the case of Dr. Gupta) midway through trial defeats SNAMHS's liability for negligence and negligence per se because it means those individual agents or employees were not negligent so SNAMHS was not either. *Id.* But this overlooks the reality that an entity like SNAMHS can only act through its employees and agents, and vicarious liability does not require the plaintiff to identify or join as a named defendant the agent or employee whose acts or omissions on behalf of their employer injured the plaintiff. *See Pate v. Wal-Mart Stores, Inc.*, No. 2:12-cv-1377-JAD-PAL, 2014 WL 3613385, at *5 (D. Nev. July 21, 2014) (rejecting the argument that, to impose vicarious liability on a corporate employer, the plaintiff must identify the employee(s) whose negligence caused the harm alleged). The named individual defendants who were dismissed before the case went to verdict primarily prevailed on legal arguments that the claims against them sounded in medical malpractice, for which liability was not available as a matter of law, *see, e.g., supra* note 3, and not on the basis that other unnamed agents and employees of SNAMHS did not expose SNAMHS to liability for negligence and negligence per se. As for Szklany, the case went to verdict separately against SNAMHS and her, with the jury finding SNAMHS liable for the negligence and negligence per se of its "agents and employees" and finding Szklany liable for her direct negligence and negligence per se. The lawyer jointly representing Szklany and SNAMHS successfully argued in a posttrial motion that it was not Szklany herself who committed acts of negligence and negligence per se but other "sub-agents" of SNAMHS, for whose conduct only SNAMHS, not she, could be

held vicariously liable. The JMOL in Szklany's favor thus does not exonerate SNAMHS from vicarious liability either, it reinforces it.

Also of note: SNAMHS's and Szklany's joint posttrial motion is inconsistent with SNAMHS's argument on appeal respecting the FAC's first and third claims for relief. In the postjudgment motion, they assert that,

> From the beginning, Plaintiffs' allegations against Szklany and against her state employer have been indistinguishable. Relevant here is the example of Plaintiffs' first claim for relief, negligence. [Citing FAC ¶ 48]. In this claim, Plaintiffs simply lump [Szklany] together with all "defendants." [Citing FAC ¶¶ 50-52]. All "Defendants" are alleged to have "failed to carefully investigate, monitor, supervise, and/or oversee discharge activities" at SNAMHS. [Citing FAC ¶ 50]. . . . Plaintiffs' third claim for relief, negligence per se, suffers from the same deficiency.

From this premise, the joint posttrial motion argued—successfully—that "Plaintiffs' negligence and negligence per se allegations against Szklany are attempts to bootstrap respondeat superior liability onto Szklany" and that "[a] supervisor simply has no vicarious liability for the acts of either her employer or her fellow sub-agents." The JMOL in favor of Szklany thus does not signify that no agent or employee of SNAMHS injured Brown and the class members, only that Szklany herself did not do so.

*The district court did not grant summary judgment to SNAMHS on negligence and negligence per se.*

But SNAMHS goes beyond analysis of the pleadings; it actually persuades the majority that the district court granted it summary judgment against Brown on his first and third claims based on the FAC's failure to mention SNAMHS by name therein. Accepting this premise, and ignoring

Supreme Court
of
Nevada

(O) 1947A

10

the basis on which the district court granted JMOL to Szklany, the majority treats the district court's vicarious liability analysis as a "reconsideration" of an earlier partial summary judgment ruling, which deserved deference as establishing law of the case. Neither the record nor the law supports this approach.

The motion for summary judgment did not separately specify the grounds on which it was based. *But see* NRCP 7(b)(1) (providing that a motion "shall state with particularity the grounds therefor"). Filed jointly on behalf of the "State Defendants," the motion sought summary judgment on all claims. The bolded headings in the points and authorities show that the State Defendants based the summary judgment motion on the grounds that, regardless of labels, the facts alleged in the FAC amounted to medical malpractice claims, requiring an affidavit of merit under NRS 41A.071 that Brown did not timely provide. *See supra* note 3; Defs.' Mot. for Summ. J. at 4 ("Medical Malpractice Claim is Barred by the Statute of Limitations"); *id.* at 5 ("Plaintiff Brown's Initial Complaint Should Have Been Dismissed when Claims for Medical Malpractice were Filed without a Supporting Affidavit of an Expert"); *id.* at 7 ("Negligence Claim is Based in Medical Malpractice"); *id.* at 8 ("Professional Negligence is a Claim for Medical Malpractice"); *id.* at 9 ("Claim for Negligent Hiring, Supervision and Training of Dr. Gupta is Grounded in Medical Malpractice"); *id.* at 10 ("Tortious Breach of Fiduciary Duty is a Medical Malpractice Claim"); and *id.* at 11 ("Conspiracy Claim is Substantially Related to Medical

Malpractice").[4] The points and authorities mention that "Plaintiff . . . did not name SNAMHS in any of the negligence claims," but that is all. No relief was sought on the basis of SNAMHS's omission from FAC paragraphs 48 and 61, and no authority was cited to support the granting of relief to SNAMHS, alone among the movants, on such basis.

Though the record on appeal is substantial, it does not include the transcript of argument on the summary judgment motion, or indeed any pretrial transcripts—including those from the final pretrial conference—which one would expect this court to review before reversing the verdict from an extensive jury trial based solely on pleadings and claims and an unclear interlocutory summary judgment order. Following argument, the district judge filed a written "decision" that he prepared himself. The decision granted the motion for summary judgment in part (as to the second, fourth, fifth, and sixth claims) on the grounds "they are, in essence, claims alleging medical malpractice/professional negligence" and precluded by Brown's failure to submit a timely affidavit of merit. It also granted summary judgment on the conspiracy claim. However, the decision denied summary judgment on the first and third claims. It distinguished between "the decision to discharge" (medical treatment) and "[p]lacing somebody into an unsafe departure mode or environment" (not in furtherance of treatment). Deeming the latter "ordinary negligence," the district court

---

[4]The summary judgment motion had two other headings—"State Defendants are Entitled to Discretionary Immunity," Defs.' Mot. for Summ. J. at 11; "Plaintiff Brown Has No Evidence to Support the Conspiracy Claim," id. at 12. The reply points and authorities track the headings in the MSJ and say nothing about paragraphs 48 and 61 of the FAC.

allowed the first and third claims to proceed. *The decision says nothing about SNAMHS's omission from paragraphs 48 and 61 of the FAC, much less anything about eliminating its exposure to direct and/or vicarious liability for negligence.*

At the district judge's request, counsel for the movants prepared a formal order memorializing his summary judgment decision. SNAMHS relies on a statement from this counsel-prepared document to support its argument on appeal, that the district court granted it summary judgment on the first and third claims. Of note, the counsel-prepared order runs 12 pages and says simply, at pages 2 to 3, that "[e]xcept for medical malpractice and conspiracy, Plaintiff Brown did not name SNAMHS, which is the state agency that operates the psychiatric hospital, in any of the other negligence claims."

SNAMHS overreached when it persuaded the majority to give law-of-the-case or preclusive effect to the statement that it added to its counsel-prepared order about SNAMHS not being named in the negligence claims. To begin with, the order was not certified as final and therefore did not "terminate the action as to any of the parties" and was "subject to revision at any time before the entry of judgment adjudicating all the rights and liabilities of all the parties." NRCP 54(b).[5] Furthermore, "[l]aw of the case does not reach a matter that was not decided"—"[a]ctual decision of an

---

[5]The case the majority relies on for the proposition an interlocutory order requires clear error or new facts to justify reconsideration, involved a successor judge being asked to reconsider a prior judge's considered ruling. *See Moore v. City of Las Vegas*, 92 Nev. 402, 551 P.2d 244 (1976); *see also Harvey's Wagon Wheel, Inc. v. MacSween*, 96 Nev. 215, 218 n.2, 606 P.2d 1095, 1097 n.2 (1980) (noting this limitation on *Moore*).

SUPREME COURT
OF
NEVADA

(O) 1947A

issue is required to establish the law of the case." 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction* § 4478, at 628 (3d ed. 2019); *see Recontrust Co. v. Zhang*, 130 Nev. 1, 7-8, 317 P.3d 814, 818 (2014) (noting that, in the appellate context, the law of the case doctrine only applies to issues the court actually addressed and decided). Here, a fair reading of the summary judgment papers and the court's decision suggests that the district court did not consider or grant summary judgment in SNAMHS's favor on the first and third claims based on its not having been named in them. Without a pretrial motion by SNAMHS directly challenging the imprecision of the pleadings, the district judge did not err in requesting supplemental briefing on the issue of the claims legitimately in play and allowing the case to proceed to verdict against SNAMHS to determine its vicarious and/or direct liability for negligence and negligence per se. *Cf. Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366-67 (11th Cir. 1996) (noting that, while shotgun pleadings are discouraged, a defendant who fails to move for a more definite statement is not entitled to the relief of dismissal without affording the plaintiff the opportunity to respond).

*Brown and the class adequately established emotional distress damages*

Nor can I agree that Brown failed to prove his damages. As the majority notes, Nevada law no longer requires the manifestation of physical symptoms to prove emotional injury in every instance. *Boorman v. Nev. Mem'l Cremation Soc'y, Inc.*, 126 Nev. 301, 308, 236 P.3d 4, 8 (2010). This change is based on the understanding that certain tortious conduct is so egregious that "an especial likelihood of genuine and serious mental distress" logically follows; that is, in some cases the nature of the tortious

SUPREME COURT
OF
NEVADA

(O) 1947A

14

conduct itself "serves as a guarantee that the claim is not spurious." *See* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 54, at 362 (5th ed. 1984) (cited with approval in *Boorman*, 126 Nev. at 308, 236 P.3d at 8). The physical manifestation requirement that *Boorman* eliminated in certain cases served as a proxy for the veracity of a claim, and *Boorman* followed a path hewn by other jurisdictions, which have eliminated the need for that proxy where the circumstances "indicate[ ] upon [their] face that . . . mental distress will result." Keeton, *supra*, § 54, at 362 (collecting cases); *cf. Chiuchiolo v. New England Wholesale Tailors*, 150 A. 540, 543 (N.H. 1930) (reasoning that "if, without [physical] impact, the causal relation [to purely emotional injury] is shown to one's reasonable satisfaction in making deductions and inferences, then [physical] impact is not such an essential").

True, *Boorman* involved the mishandling of a corpse, for which there is a well-established line of cases recognizing liability, *see* Keeton, *supra*, § 54, at 362 (collecting cases), but it is within this court's province to expand precedent—as constrained by its logical bounds—to ensure the availability of redress where a tortious wrong plainly calls for it. *See id.* at 360 (stating that "[i]t is the business of the courts to make precedent where a wrong calls for redress, even if lawsuits must be multiplied"); *see also* Dan B. Dobbs, Paul T. Hayden & Ellen M. Bublick, *The Law of Torts* § 383 (2d ed. 2011) (noting the established categories where awards for pure emotional distress are recognized and that "[o]ver time, still other cases seemed to demand relief"). And, at trial, plaintiffs' expert witness issued a pointed reminder to the defendants that bears repeating here: "People who are psychotic are people." In light of the logical conclusions this court can

SUPREME COURT
OF
NEVADA

(O) 1947A

15

draw from our shared humanity, judicial maintenance of a hard line at the exact category of wrong at issue in *Boorman* would be arbitrary. *See* Richard N. Pearson, *Liability to Bystanders for Negligently Inflicted Emotional Harm—A Comment on the Nature of Arbitrary Rules*, 34 U. Fla. L. Rev. 477, 480 (1982) (noting that a rule of tort law may be so arbitrary so as to require reform where "persons in substantially the same position are treated differently, or persons in substantially different positions are treated the same").

Moreover, such a determination is blind to the possibility that, in certain other extreme and egregious cases with different circumstances, "the very fact of what a plaintiff has endured [still] might be sufficient evidence that he or she has suffered a mental disturbance." Elizabeth Handsley, *Mental Injury Occasioned by Harm to Another: A Feminist Critique*, 14 L. & Ineq. 391, 431 (1996); *see also* Dobbs, *supra*, § 383, at 383 (discussing cases where emotional distress can be inferred from the facts and noting that "stand-alone emotional harm is real and an important concern, and [the facts of] many cases leave us in no doubt about the reality of the distress"); *cf.* John Havard, *Reasonable Foresight of Nervous Shock*, 19 Mod. L. Rev. 478, 479 n.5 (1956) (noting that "interference with health and comfort amount[ed] to actual bodily harm within the Offences against the Person Act [of] 1861" (internal quotation marks omitted)). This is the approach favored by the Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 47 (Am. Law Inst. 2012): "An actor whose negligent conduct causes serious emotional harm to another is subject to liability to the other if the conduct . . . occurs in the course . . . of relationships in which negligent conduct is especially likely to cause serious emotional harm." *See*

*Boorman*, 126 Nev. at 308, 236 P.3d at 8 (citing prior draft of the Restatement section). The comments to this section explain that a "relationship is one in which serious emotional harm is likely or where one person is in a position of power or authority over the other and therefore has greater potential to inflict emotional harm." Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 47 cmt. f.

Here, the circumstances of the plaintiff class were so precarious, the disparity in power and authority between them and the defendants so extreme, that the defendants' abuse thereof resulted in one of the worst-case abandonment scenarios imaginable. On one side, a *public medical institution* intended as a last-resort safe harbor and treatment option for some of this state's most vulnerable residents—invoking the special relationship of trust between medical professionals and their patients, *see Hoopes v. Hammargren*, 102 Nev. 425, 431, 725 P.2d 238, 242 (1986) (noting that "[s]ociety has placed physicians in an elevated position of trust, and, therefore, the physician is obligated to exercise utmost good faith"), and further cloaking that relationship in the authority of the state and the trust that it inspires. On the other side, indigent, suicidal, and otherwise at-risk Nevada residents, in the midst of personally ruinous psychiatric straits of unfathomable depths. And, with full knowledge of plaintiffs' circumstances, SNAMHS exploited their trust—admitting them, treating them with psychotropic medications, then through its social workers and nonmedical agents and employees physically abandoning them without contacts, funds, identification, or sufficient stabilizing medications, in foreign states to which they had no meaningful connection.

In light of these facts and the authorities cited above, there is simply no reason that defendants' inhumanity should not be a sufficient proxy for the veracity of plaintiffs' claims, without need for evidence of any physical manifestations of their distress. Accordingly, I would hold that all plaintiffs needed to do to demonstrate the existence of injury in this case was "allege some emotional disturbance resulting from the . . . negligent conduct." *Boorman*, 126 Nev. at 308, 236 P.3d at 8. And they did.

Not all individuals describe an emotional disturbance the same way. For some, the most they can do is to describe factually what occurred. Others may have more emotional fluency and be able to put into words how what they experienced made them feel. Brown fell into the former category—his testimony mainly narrated the events adding up to the abandonment and desolation he experienced—the bus trip, the lack of people to meet him, having no one to call and no place to go, sleeping on the street in the rain. But despite this testimony—and its acknowledgment of the underlying facts as "quite disturbing"—the majority posits that Brown "fail[ed] to present evidence of any emotional distress he suffered." Majority op. at 10 n.9. This conclusion misses the inferences a jury could reasonably draw from the circumstances Brown described. *Cf. Ewell v. State*, 105 Nev. 897, 900, 785 P.2d 1028, 1029 (1989). Specifically, that Brown suffered serious mental disturbance as a result. *See* Handsley, 14 L. & Ineq. at 431 (recognizing that "there will be situations where one would think only a very strange person indeed would not suffer [an emotional] disturbance"). Moreover, even if we were to set these reasonable inferences aside, even if we required from Brown a more conclusory proffer, we have it—when asked whether defendants' practices had harmed him, Brown answered,

SUPREME COURT
OF
NEVADA

(O) 1947A

18

straightforward and to the point, "Yes," and returned to his narration of the events he endured in support of that reaction.

Beyond this, the majority discards the testimony of plaintiffs other than Brown, based on an oral stipulation by the parties made after the evidence concluded and as the matter went to closing argument, that "[t]he figure, if any, that is arrived at for Mr. Brown, will be utilized for each one of the members of the class." But this does not follow; the stipulation is plainly limited to the amount of damages to be awarded; each class member's testimony remains relevant and probative on every other front. And further supporting Brown's description of events and their likely impact, another plaintiff—who arrived at the hospital by ambulance after nearly taking his life in a Harrah's restroom, and whom the defendants put on a bus to downtown Los Angeles just a short while thereafter—testified that he suffered a "debilitating" panic attack after being subjected to "Greyhound therapy," realizing that he had been shuttled to downtown Los Angeles with no arrangements made for his care, despite a defendant having allegedly told him that he would be transported to a treatment facility in Pasadena. This plaintiff further testified that these events had so emotionally distressed him that he could not even "adequately describe how much [he] was harmed," and that defendants' conduct had left him feeling there was "no hope." A third plaintiff described his experience following his involuntary discharge as "horrible," noting that on his bus ride he was "hearing voices" and "was in a state of mind of a real sick person." And a fourth plaintiff testified that he was preparing to slit his wrist with scissors immediately after disembarking from the Greyhound bus on which

the defendants had placed him, but that quick action by an intervening police officer saved him.

In addition, Brown put on expert testimony describing the special vulnerability of those in his position, which sort of representative evidence may properly bolster individual claims in a class action. Hillel J. Bavli & John Kenneth Felter, *The Admissibility of Sampling Evidence to Prove Individual Damages in Class Actions*, 59 B.C.L. Rev. 655, 701 (2018); cf. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 455 (2016) ("In a case where representative evidence is relevant in proving a plaintiff's individual claim, that evidence cannot be deemed improper merely because the claim is brought on behalf of a class."). For instance, well-qualified mental health professionals testified that: "The common issue about people who are admitted to a psychiatric hospital is not a particular diagnosis. It's a group of people that have not been able to handle stress very well, have not been very resilient to dealing with life['s] vicissitudes, who get overwhelmed . . . and get into crisis"; "[T]hey're at high risk for repeated hospitalizations, they're at high risk for suicide, for arrest, for other kinds of bad things happening"; "[T]he people who end up in the hospital are . . . much more susceptible to stress, to dealing badly with stress, . . . to react to stress by becoming suicidal, by becoming more psychotic, by becoming more anxious. And this is absolutely clearly a stressful scenario that you put [the plaintiffs] in." Plaintiffs' experts also powerfully testified as to the weight of defendants' misdeeds and their likely effect: "I think we're talking about human standards. . . . [I]magine having the worst time in your entire life, being out of control and frightened, and being put on a

Supreme Court
of
Nevada

(O) 1947A

20

taxi and being put on a bus, and having no money in your pocket, . . . you could just imagine what the human condition of that is."

What more the majority would require to adequately show emotional distress is unclear—certainly, a victim need not describe for the jury a precise conclusion of law, e.g., "I suffered serious emotional distress," that the facts already support. *Cf. Ewell*, 105 Nev. at 900, 785 P.2d at 1029 (noting that a criminal jury "is entitled to draw reasonable inferences from the evidence"). Nor ought this court diminish a jury's role in determining injury and measuring damages by reweighing and separately evaluating the evidence proffer. *See Dimick v. Schiedt*, 293 U.S. 474, 485-86 (1935) (noting that "trial by jury has always been, and still is, generally regarded as the normal and preferable mode of disposing of issues of fact in civil cases at law" including questions of liability and damages); *Broussard v. Hill*, 100 Nev. 325, 327, 682 P.2d 1376, 1377 (1984) (noting that "[i]f there is conflicting evidence on a material issue, or if reasonable persons could draw different inferences from the facts, the question is *one of fact for the jury and not one of law for the court*" (emphasis added)); *see* Restatement (Second) of Torts § 328C cmt. d (Am. Law Inst. 1965) (stating that "[i]n any case where different conclusions may be reached, it is the function of the jury to determine the amount of compensation for legally compensable harm to the plaintiff"). The record on appeal is cold and flat, offering little way for this court to know what each witness's demeanor was at trial, or the extent to which the testifying plaintiffs may have shown or expressed emotional pain that cannot be conveyed in print. Because of this, "[w]hen considering a damages award, we presume that the jury believed the evidence offered by the prevailing party and any inferences derived from

SUPREME COURT
OF
NEVADA

(O) 1947A

the evidence." *Wyeth v. Rowatt*, 126 Nev. 446, 470, 244 P.3d 765, 782 (2010). And here, we should presume that the jury that found that Brown and the class of plaintiffs he represents were injured and due recovery of $250,000 each, a sum that the district court later reduced to $100,000, did so based on its justified inferences from the facts and circumstances, as well as the emotional harm plainly described in the record. There being evidence in the record supporting this presumption, and nothing to the contrary, this court should affirm the jury's verdict.

*The injunction has not expired and should be affirmed*

NRS 33.010(1) authorizes a district court to grant an injunction "[w]hen it shall appear by the complaint that the plaintiff is entitled to the relief demanded, and such relief or any part thereof consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually." In its judgment, the district court exercised its power invested under NRS 33.010(1) by entering a permanent injunction against SNAMHS as follows: "Defendant SNAMHS is enjoined from discharging psychiatric patients to travel to out-of-state locations without first arranging for them to be met upon arrival at their destinations, confirming that there is housing available for them, and confirming where and how the patients will obtain appropriate follow-up care." The injunction portion of the judgment also requires SNAMHS to document certain detailed discharge information in its patients' medical records and separately imposes a two-year reporting requirement on SNAMHS, during which SNAMHS must file quarterly reports with the district court and class counsel. The two-year reporting period has expired but this does not affect the remaining obligations stated in the judgment's permanent injunction

SUPREME COURT
OF
NEVADA

(O) 1947A

22

provisions. I therefore disagree with the majority's observation that "the injunction order has already expired," Majority op. at 12 n.9, and would affirm the injunction provisions of the district court's judgment, save those imposing the quarterly reporting requirements, which I agree have been discharged.

_____, J.
Pickering

